# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **AHMAD SAQR** | : | CASE NO. 1:18-cv-00542 |
| c/o Godbey Law | | |
| 708 Walnut Street, Suite 600 | : | |
| Cincinnati, Ohio 45202, | | JUDGE: _____ |
| | : | |
| Plaintiff, | | |
| | : | **COMPLAINT FOR** |
| **OMAR SAQR** | | **MONETARY, INJUNCTIVE,** |
| c/o Godbey Law | : | **AND DECLARATORY** |
| 708 Walnut Street, Suite 600 | | **RELIEF** |
| Cincinnati, Ohio 45202, | : | |
| | | **WITH JURY DEMAND** |
| -vs- | : | **ENDORSED HEREON** |
| | | |
| **THE UNIVERSITY OF** | : | |
| **CINCINNATI** | | |
| 2600 Clifton Avenue | : | |
| Cincinnati, Ohio 45220 | | |
| | : | |
| -and- | | |
| | : | |
| **THE UNIVERSITY OF** | | |
| **CINCINNATI COLLEGE** | : | |
| **OF MEDICINE** | | |
| 3235 Eden Avenue | : | |
| CARE/Crawley Building, Ste E-870 | | |
| Cincinnati, Ohio 45267 | : | |
| | | |
| Defendants. | : | |

Plaintiffs Ahmad Saqr ("Ahmad") and Omar Saqr ("Omar") (collectively, "Plaintiffs") state the following for their Complaint against Defendant the University of Cincinnati and Defendant University of Cincinnati College of Medicine (collectively, "Defendant"):

## INTRODUCTION

1. This is a lawsuit, brought under the Americans with Disabilities Act, the Rehabilitation Act, and Title VI to remedy Defendant's pattern and practice of discrimination against disability and national origin in its support, dismissal, and appeals process. The University of Cincinnati Medical School fails to provide equal accommodations to minority students in the above-stated classes. Further, Defendant disproportionately dismisses these minorities compared to its non-minority students, as well as in comparison to other regional medical programs.

## PARTIES

2. Plaintiff Ahmad Saqr was a student at Defendant's medical school, and a resident of Hamilton County, Ohio.

3. Plaintiff Omar Saqr was a student at Defendant's medical school, and a resident of Hamilton County, Ohio.

4. Defendant the University of Cincinnati is a university located within Hamilton County, Ohio that receives federal funding.

5. Defendant University of Cincinnati College of Medicine is a school within the University of Cincinnati that receives federal funding.

## JURISDICTION AND VENUE

6. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

7. Plaintiffs also state claims under the laws of the State of Ohio. These claims are inherently related to the other claims in this case, over which this Court has original jurisdiction, that they are a part of the same case or controversy under Article III of the

United States Constitution. Accordingly, this Court has supplemental jurisdiction of these claims under 28 U.S.C. § 1367.

8. Venue is proper in the Southern District of Ohio under 28 U.S.C. § 1391 because all or a substantial amount of the events giving rise to Plaintiffs' claims occurred within this District.

## STATEMENT OF FACTS

9. If one of Defendant's students are struggling, the Performance and Advancement Committee ("PAC") decides if that student is recommended for dismissal.

10. The PAC communicates with the student, and it sends its recommendation for dismissal to the Dean.

11. The student is then able to appeal the PAC's recommendation for appeal.

12. Three faculty members sit on the appeal panel, and they are presented information from the PAC and the student.

13. The panel then decides to uphold the PAC's decision or overturn it.

14. The student must: (a) submit any new information not previously available to the PAC; (b) state the nature of the new information and provide reasons it was not previously available; (c) explain the relevance of the new information; and (d) show that the PAC's decision was unreasonable.

15. There are approximately 30 faculty members in the PAC, and only approximately 2 of these members are racial minorities.

16. In 2016-2018, approximately 7 students were dismissed.

17. In 2016-2018, all the dismissed students were minorities, and a majority of these minorities had national origins which were not white-American.

18. Based upon information and belief, 100% of the students who were dismissed from Defendant's program in recent years were minority students.

19. In contrast, Plaintiffs are aware that at least one white student successfully appealed his recommended dismissal in comparison to the abysmal dismissal rates of minorities in the same time-period.

20. Therefore, in recent years, white students have a 100% success rate appealing their dismissals compared to higher dismissal rate of their minority-counterparts.

21. Additionally, Defendant dismisses minority students at a rate that far exceeds its regional counterparts, such as Ohio State University and the University of Toledo.

22. Defendant's Medical Student Handbook contains both an ADA accommodations policy, as well as a non-discrimination policy.

23. Defendant did not fulfill its contractual duties under the ADA Policy and non-discrimination policy regarding Plaintiffs.

### A. Ahmad Saqr

24. Plaintiff Ahmad Saqr is an Egyptian male, he is Muslim, and he had a disability.

25. Ahmad attended Ohio State University for undergraduate studies.

26. Ahmad began studying medicine with Defendant in August of 2010.

27. Defendant recommended Ahmad for dismissal on June 29th, 2016.

28. Defendant held an appeal hearing for Ahmad on August 2, 2016, and it dismissed him finally on August 4, 2016.

29. One of Defendant's agents, who represents minorities, circulated an email stating that Ahmad did not receive the same level of support that Defendant's other students received.

30. Indeed, in 2010, the PAC had forced Ahmad to take off 1.5 years instead of several months, which was disproportionate to their treatment of members outside of Ahmad's protected class. It was also circulated that Ahmad had passed his classes when he received support, but when Ahmad did not receive the same level support of his classmates, it lead to failure.

31. Ahmad also did not receive the same level of counseling that non-minority students receive.

32. When the PAC made its decision(s) regarding Ahmad, it did not contact his academic advisor, and he met the PAC alone and without support.

33. Defendant contacts the academic advisors for its non-minority students going through the same process to ensure its non-minority students have guidance through the process.

34. The PAC also learned during this process that Ahmad had ADHD and general anxiety disorder, and it learned that Ahmad needed accommodations.

35. Ahmad's disability affects his ability to learn in a manner inconsistent with similarly-situated individuals.

36. Instead of providing him any proper accommodations, Defendant forced him to endure an overly burdensome exam schedule in a 3-week period.

37. One of Defendant's agents informed Ahmad that she was unaware of any other students having to undergo such a rigorous exam schedule.

38. Thus, instead of accommodating Ahmad, Defendant stacked the odds against him.

39. This is not surprising because when Ahmad asked for help and accommodations, Defendant's agents reacted as if he was a nuisance rather than extending any compassion.

40. Defendant's hostile reactions discouraged Ahmad and others like him from requesting accommodations or demanding assistance.

41. During the relative time-period of Ahmad's dismissal, a non-minority student was able to successfully appeal his dismissal in comparison to 100% failure-rate of minorities, and Defendant treated similarly-situated non-minority students differently throughout their studies with Defendant.

42. Before and after his dismissal, Ahmad did complain that he was not receiving accommodations and was different treatment than non-minority students.

43. After his final dismissal, Ahmad did file a complaint with Defendant putting it on notice for his disparate treatment in the Program.

### B. Omar Saqr

44. Omar Saqr is an Egyptian male, he is Muslim, he is Ahmad's brother, and he began studying with Defendant in August of 2015.

45. Defendant recommended Omar for dismissal on November 13, 2018, and he was finally dismissed on January 1, 2018.

46. During the relative time-period, Omar struggled with anxiety, depression, and Attention Deficit Hyperactivity Disorder ("ADHD").

47. These disabilities affect Omar's ability to learn in a manner consistent with average people similarly-situated.

48. Omar informed Defendant of his disabilities and did seek accommodations.

49. Defendant offered no proper accommodations to Omar.

50. In fact, Defendant instructed Omar to take his own steps to treat his disabilities, but Defendant offered to provide him nothing.

51. Defendant further recommended Omar seek Islamic support, but it offered no accommodations.

52. Within 3 months of his diagnosis of ADHD, Defendant dismissed Omar..

53. During his dismissal, Defendant's agents made the comment that they were not sure that Omar could meet his expectations even if his newly-diagnosed disabilities were dealt with.

54. These agents were not licensed psychiatrists, and they were not qualified to make these determinations.

55. Omar's Appeal Panel also lacked any foreign nationals.

56. During his appeals process, Omar confronted Defendant for failing to provide him accommodations and treating him differently.

57. Defendant's agents reacted with hostility to his comments during the appeal.

58. Defendant treated Omar differently than similarly-situated students who were not minorities, and Defendant failed to make any reasonable accommodation regarding Omar's disabilities.

## STATEMENT OF CLAIMS

### Count I
### The Americans with Disabilities Act of 1990
### (Discrimination)

59. Plaintiffs restate all previous paragraphs.

60. Plaintiffs both had disabilities which affected their abilities to learn and/or attend Defendant's program in the same manner as an average person similarly-situated.

61. Plaintiffs made Defendant aware that they had disabilities.

62. Defendant was aware that Plaintiffs had disabilities, and Defendant perceived that Plaintiffs has disabilities that Defendant assumed made Plaintiffs unworthy of its program material.

63. Plaintiffs both requested support and accommodations from Defendant regarding their disabilities.

64. Defendant refused to provide either Plaintiff any proper accommodation.

65. Defendant could have provided accommodations, which were reasonable and not an undue burden.

66. Instead, Defendant stacked the odds against Plaintiffs when it failed to provide the same support of non-minority students and even demand a more rigorous exam schedule than other students.

67. Plaintiffs could have performed in the program had Defendant provided reasonable accommodations to Plaintiffs. Plaintiffs would not have been dismissed if they did not have a disability.

68. Defendant damaged Plaintiffs when it unlawfully failed to accommodate them and dismissed them from the Program.

### Count II
### The Americans with Disabilities Act of 1990
### (Retaliation)

69. Plaintiffs restate all previous paragraphs.

70. Plaintiffs reported to Defendant that they had disabilities and required accommodations.

8

71. Plaintiffs further confronted Defendant for refusing to provide them accommodations for their conditions.

72. In addition, Ahmad had filed a Complaint with Defendant after his dismissal.

73. Defendant further retaliated against Omar relating to his brother's Complaint against the Program.

74. Defendant retaliated against Plaintiffs and dismissed them from its program damaging both Plaintiffs.

## Count III
## Rehabilitation Act
## (Discrimination)

75. Plaintiffs restate all previous paragraphs.

76. Both Plaintiffs had disabilities.

77. Plaintiff's disabilities significantly restricted their ability to learn and achieve as compared to other medical students.

78. Other than Plaintiff's disabilities, Plaintiffs were qualified for Defendant's medical school program.

79. Plaintiffs requested accommodations for their disabilities.

80. Plaintiffs request for accommodations were reasonable and did not require Defendant to fundamentally change its curriculum.

81. Defendant ignored the accommodation requests resulting in the dismissal of Plaintiffs from Defendant's program.

82. Indeed, Defendant damaged Plaintiffs when it ousted Plaintiffs from the medical program because of their disability.

## Count IV
## O.R.C §4112
## (Discrimination)

83. Plaintiffs restate all previous paragraphs.

84. Plaintiffs suffer from disabilities.

85. Defendant was made aware of Plaintiffs disabilities.

86. But for Plaintiffs disabilities, they were otherwise qualified for Defendant's medical program.

87. Instead of providing accommodations for Plaintiffs disabilities, Defendant kicked Plaintiffs out of its medical program.

88. Plaintiffs suffered a discriminatory act when they were kicked out of Defendant's program because of their disabilities.

## Count V
## Title VI
## (National Origin and Race Discrimination)

89. Plaintiffs restate all previous paragraphs.

90. Plaintiffs are Egyptian, Muslim males.

91. Plaintiffs were both qualified for Defendant's program.

92. Defendant dismissed and denied Plaintiffs because of their national origin and race.

93. Defendant's policies regarding the PAC review process are designed to intentionally discriminate against similarly-situated non-white students.

94. Defendant has a pattern and practice of systemic discrimination regarding students with different national origins during the support, dismissal and appeals processes.

95. Defendant also dismisses these minority-students at a rate surpassing its regional comparators.

96. Indeed, even one of Defendant's agents wrote that Ahmad Saqr did not receive the same level of support of other students in Defendant's program.

97. Defendant treated both Plaintiffs differently than its non-minority counterparts.

98. Defendant unlawfully and intentionally discriminated against Plaintiffs in violation of Title VI and damaged both Plaintiffs.

### Count VI
### Title VI
### (Retaliation)

99. Plaintiffs restate all previous paragraphs.

100. Plaintiffs both confronted and reported to Defendant that it did not accommodate their faith and/or treated them differently based upon their national origin and race.

101. Defendant denied Plaintiffs' appeals in retaliation for reported discrimination and unequal treatment in its program.

102. Defendant damaged both Plaintiffs.

### Count VII
### Breach of Contract

103. Plaintiffs restate all previous paragraphs.

104. Defendant contracted with Plaintiffs.

105. In its handbook, Defendants agreed to not discriminate against Plaintiffs based upon their race and national origin.

106. Defendants also agreed to accommodate Plaintiffs and not discriminate against them regarding their disabilities.

107. Plaintiffs performed their duties.

108. Defendants breached their contractual duties when they discriminated against Plaintiffs and failed to meet their duties under the ADA.

## Count VIII
## Injunctive Relief

109. Plaintiffs restate all previous paragraphs.

110. Defendant has acted unlawfully, has violated Plaintiffs' rights, and it will continue to do so.

111. Defendant's policies, conduct, and procedures are unlawful.

112. Plaintiffs are entitled to an order enjoining Defendant from continuing to conduct itself in a manner that discriminates against its students on the basis of race and/or disability.

## Count IX
## Declaratory Relief

113. Plaintiffs restate all previous paragraphs.

114. Plaintiffs are entitled to a declaration that Defendant's policies and practices are unlawful.

## PRAYER FOR RELIEF

**Wherefore,** Plaintiffs respectfully requests that this Court issue judgment in their favor on all Counts and award them the following relief:

    a. Reinstatement;

    b. Injunction of unlawful conduct;

    c. Declaration of unlawful conduct;

    d. Compensatory damages;

    e. Statutory damages;

    f. Attorney Fees;

    g. Any and all other relief available in law or equity.

Respectfully Submitted,

*/s/ Matt Miller-Novak*
Matthew-Miller Novak (0091402)
GODBEY & ASSOCIATES
708 Walnut Street, Suite 600
Cincinnati, Ohio 45202
PH: 513/241-6650 – FX: 513/241-6649
*Matt@godbeylaw.com*

-and-

Brian P. Gillan (0030013)
FREKING MYERS & REUL LLC
600 Fine Street, 9th Floor
Cincinnati, Ohio 45202
PH: 513/721-1975 – FX: 513/651-2570
*bgillan@fmr.law*

***Co-Counsel for Plaintiffs***

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all matters so triable.

*/s/ Matt Miller-Novak*