**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **Ahmad Saqr**, *et al.*, | : | |
| | : | |
| **Plaintiffs,** | : | **Case No. 1:18-cv-542** |
| | : | |
| **v.** | : | **Judge Dlott** |
| | : | |
| **University of Cincinnati**, *et al.*, | : | **Magistrate Judge Bowman** |
| | : | |
| **Defendants.** | : | |

---

### DEFENDANTS' MOTION TO DISMISS

---

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants University of Cincinnati and University of Cincinnati College of Medicine move this Court to dismiss Plaintiffs' claims in their entirety. As explained in the Memorandum in Support, this Court lacks subject matter jurisdiction over some of Plaintiffs' claims, and the claims over which this Court has jurisdiction fail to state a claim upon which relief can be granted.

Respectfully submitted,

**MICHAEL DEWINE (0009181)
Ohio Attorney General**

*s/ Reid T. Caryer*

_____
REID T. CARYER (0079825)
ELIZABETH HOWELL (0092605)
Assistant Attorneys General
Education Section
30 E. Broad St., 16th Floor, Columbus, Ohio 43215
Phone: (614) 644-7250 / Fax: (614) 644-7634
reid.caryer@ohioattorneygeneral.gov
elizabeth.howell@ohioattorneygeneral.gov

*Counsel for Defendants*

1

## MEMORANDUM IN SUPPORT

### I.    Introduction.

Plaintiffs, both former, dismissed medical students at the University of Cincinnati, attempt to transform their dismissals into civil rights (*i.e.* Title VI of the Civil Rights Act) and other violations (*i.e.* Americans with Disabilities Act, Rehabilitation Act, and state law claims).

Plaintiffs' claims must be dismissed in their entirety.  The law is well-established that Plaintiffs cannot bring state-law claims against a state university in this Court. Moreover, Plaintiffs do not plausibly allege a violation of Title VI, certainly not anything akin to the type of entrenched racial injustices in education the country sought to end with the passage of Title VI. And aside from the fact that Congress did not abrogate the university's sovereign immunity from ADA discrimination and retaliation claims, Plaintiffs' claims fail because they do not plausibly allege violations under any of the discrimination statutes.

### II.   Allegations in the Complaint.

Brother-Plaintiffs, Ahmad and Omar Saqr, matriculated to the University of Cincinnati's College of Medicine. (Doc. 1, Complaint, ¶¶ 26, 44).  Ahmad enrolled in August 2010 and Omar followed in August 2015.  (*Id.*)  Both were later dismissed from the College of Medicine, Ahmad on August 4, 2016 and Omar on January 1, 2018.  (*Id.*, ¶¶ 28, 45).

The College of Medicine affords students a multi-step review process prior to dismissal. (*Id.*, ¶¶ 9 – 14).  The College of Medicine went through the multi-step review process prior to dismissing Plaintiffs and Plaintiffs do not seem to dispute that they were afforded due process prior to their dismissals.  (*Id.*, ¶¶ 27, 28, 45).

On the other hand, Ahmad alleges the College did not provide him the "same level of support" that other students received, like contacting his academic advisor to allow her to

accompany him to a meeting before the College's Performance and Advancement Committee ("PAC"), or providing him an accommodation for his ADHD and anxiety.   (*Id.*, ¶¶ 29, 21, 32, 34, 36).

Similar to his brother, Omar alleges the College of Medicine and his "appeal panel" did not provide him an accommodation for his ADHD.  (*Id.*, ¶¶ 49, 50, 51, 56).

Now, in this lawsuit, both Plaintiffs claim Defendants, the University of Cincinnati and its College of Medicine, denied them accommodations, discriminated and retaliated against them in violation of the Americans with Disabilities Act and § 504 of the Rehabilitation Act, and dismissed them because of their race and national origin in violation of Title VI of the Civil Rights Act of 1964.  (*Id.*, ¶¶ 59-82, 89-102).  Plaintiffs further assert claims for injunctive and declaratory relief, and state law claims for discrimination in violation of O.R.C. Chapter 4112 and breach of contract.  (*Id.*, ¶¶ 83-88, 103-114).  As detailed below, this Court lacks subject matter jurisdiction over some of Plaintiffs' claims, and the claims over which this Court has jurisdiction fail to state a claim upon which relief can be granted.

## III.    Standard of Review.

### A.    The Rule 12(b)(6) standard.

A complaint that fails to state a claim upon which relief can be granted is subject to dismissal under Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, the complaint must include sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding whether the complaint is plausible, the Court must interpret it in a light most favorable to the non-moving party, accept

3

*factual* allegations as true, and give the plaintiff the benefit of reasonable inferences. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted). However, the Court is not required to accept as true legal conclusions bereft of supporting factual allegations. *Iqbal*, 556 U.S. at 678.

A properly stated claim must also satisfy the pleading requirements in Fed. R. Civ. P. 8(a). This pleading standard "does not require detailed factual allegations . . . [but a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action is insufficient." *Iqbal*, 556 U.S. at 678 (internal quotations and citations omitted). Also insufficient is a complaint which "tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

### B. The Rule 12(b)(1) standard.

"When a defendant moves to dismiss on grounds of lack of subject matter jurisdiction, 'the plaintiff has the burden of proving jurisdiction in order to survive the motion.'" *Nichols v. Muskingum College*, 318 F.3d 674 (6th Cir. 2003) (quoting *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)). When a defendant asserts that the plaintiff has not alleged sufficient facts in his complaint to demonstrate subject matter jurisdiction, the Court must take the allegations in the complaint as true. *Id.* at 677.

### IV. Analysis of Plaintiffs' claims.

#### A. Counts I and II – ADA claims.

##### i. The Eleventh Amendment bars Plaintiffs' ADA claims.

In Counts I and II of their Complaint, Plaintiffs allege that Defendants denied them accommodations, discriminated and retaliated against them in violation of the Americans with Disabilities Act of 1990 ("ADA"). Plaintiffs do not specify the Title of the Act under which they

4

are suing. Presumably they are suing under Title II.

Any claims against Defendants under Title II of the ADA are barred by the Eleventh Amendment. *See United States v. Georgia*, 546 U.S. 151 (2006); *McCulley v. Univ. of Kansas School of Medicine*, No. 12-2587-JTM, 2013 U.S. Dist. LEXIS 51516 (D. Kan. Apr. 10, 2013) (finding no abrogation of sovereign immunity in the context of medical schools); *Guttman v. Khalsa*, 669 F.3d 1101 (10th Cir. 2012) (finding no abrogation of sovereign immunity in the context of medical licensing decisions); *Press v. State Univ. of New York at Stony Brook,* 388 F.Supp.2d 127 (E.D.N.Y.2005) (application of Title II to university's alleged denial of access to post-secondary education on basis of disability was not valid exercise of congressional power); *Johnson v. S. Conn. State Univ.,* No. 3:02-CV-2065, 2004 U.S. Dist. LEXIS 21084 (D. Conn. Sept. 30, 2004) (granting university's motion to dismiss plaintiff's claim under Title II of ADA on sovereign immunity grounds).

Because Defendants are immune from an underlying Title II discrimination claim, Defendants are also immune from Plaintiffs' Title V retaliation claim. *See Demshki v. Monteith*, 255 F.3d 986, 988-89 (9th Cir. 2001); *cf. McCollum v. Owensboro Cmty. & Tech. College*, No. 4:09CV-00121-M, 2010 U.S. Dist. LEXIS 135637 (W.D. Ky. Dec. 22, 2010).

Even if Plaintiffs' ADA claims are not barred by sovereign immunity, as explained below, Plaintiffs still fail to state a plausible claim.

### ii. The two-year statute of limitations bars some of Ahmad Saqr's claims.

Plaintiffs' ADA and Rehabilitation Act claims are subject to a two-year statute of limitations. *See McCormick v. Miami Univ.*, 693 F.3d 654, 662 (6th Cir. 2012) (Rehabilitation Act); *McCormick v. Miami Univ.*, 2011 U.S. Dist. LEXIS 48467, *37-45 (S.D. Ohio, May 5, 2011) (ADA). Plaintiff Ahmad Saqr's ADA and Rehabilitation Act claims that Defendants

denied him an accommodation accrued more than two years before he filed his current Complaint on August 3, 2018.

When a claim accrues is a matter governed by federal law. *Sevier v. Turner*, 742 F.2d 262, 272-73 (6th Cir. 1984) (citing cases). The same standard for accrual of a claim is used for actions under the ADA and the Rehabilitation Act. *See, e.g.*, *Bishop v. Children's Ctr. for Dev. Enrichment*, 618 F.3d 533, 537 (6th Cir. 2010).

"The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Sevier,* 742 F.2d at 273 (citations omitted). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.* (citations omitted). The Sixth Circuit looks to "what event should have alerted the typical lay person to protect his or her rights." *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991).

Ahmad alleges "[t]he PAC learned during this process that [he] had ADHD and general anxiety disorder, and it learned that [he] needed accommodations." (Doc. 1, ¶ 34). Ahmad does not specify which PAC "learned that [he] needed accommodations", the one in 2010 or the one in 2016. No matter. If Ahmad's allegation refers to the 2010 PAC and its decision, that is the date when he "[h]ad reason to know of the injury which is the basis of his action." *Sevier*, 742 F.2d at 273. His ADA and Rehabilitation Act claims filed some eight years later, on August 3, 2018, are unquestionably beyond the two-year statute of limitations. If Ahmad's allegation refers to the 2016 PAC and its decision, that decision occurred on June 29, 2016 (Doc. 1, ¶ 27) which is similarly beyond the two-year statute of limitations. Therefore, Counts I and III brought by Plaintiff Ahmad Saqr claiming that Defendants denied him an accommodation must be dismissed.

6

### iii. **Plaintiffs fail to state a plausible ADA discrimination claim.**

To make out a *prima facie* case of ADA discrimination a plaintiff must show first, that he is disabled; second, that he was "otherwise qualified" to continue in defendant's program; and third, that he was dismissed from the program on the basis of his disability. *Kaltenberger v. Ohio Coll. of Podiatric Med*., 162 F.3d 432, 435 (6th Cir. 1998).

For the first prong, Plaintiffs' alleged disability is ADHD. (Doc. 1, ¶¶ 34, 46).  Omar received his ADHD diagnosis sometime in September or October 2015 (*Id*., ¶¶ 45, 52).  Ahmad provides no date for his diagnosis.  (*Id*., ¶ 34).  For purposes of this Motion, Defendants assume Plaintiffs' allegations satisfy the first prong of their *prima facie* case.  However, Plaintiffs have not satisfied the two remaining prongs.

Plaintiffs' allegations do not support that they were otherwise qualified to continue in Defendants' medical school program.  *Southeastern Community College v. Davis*, 442 U.S. 397, 406 (1979) ("An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap.").  Indeed, they show the exact opposite.  Irrespective of their alleged disability, Plaintiffs failed to maintain a level of performance necessary to continue in the program.  (Doc. 1, ¶¶ 9, 27, 45). *See Kaltenberger v. Ohio Coll. Of Podiatric Med*., 162 F.3d 432 (6th Cir. 1998); *Shaikh v. Lincoln Mem'l Univ*., 608 Fed Appx. 349 (6th Cir. 2015).

Moreover, Plaintiffs' allegations do not support that their dismissals were taken against them because of their alleged disability.  *Lewis v. Humboldt Acquisition Corp*., 681 F.3d 312, 317 (6th Cir. 2012) (finding "because of" causation standard applies to ADA Title II claim).  Ahmad alleges that the PAC "learned that [he] needed accommodations" and Omar alleges that "Defendant's agents made the comment that they were not sure that [he] could meet his expectations even if his newly-diagnosed disabilities were dealt with."  (Doc. 1, ¶¶ 34, 53).  But

neither allegation shows that "but for" each Plaintiffs' alleged disability their dismissals would not have occurred. *Gohl v. Livonia Pub. Sch. Dist.*, 836 F.3d 672, 682 (6th Cir. 2016). Moreover, at least for Omar, the dismissal occurred in spite, not because, of his alleged disability.  Thus, Plaintiffs fail to state an ADA discrimination claim upon which relief can be granted.

### iv.    Plaintiffs fail to state a plausible ADA failure to accommodate claim.

Count I also alleges that Defendants failed to accommodate Plaintiffs' respective disabilities in violation of the ADA.  As discussed above, Ahmad's failure to accommodate claim is barred by the two-year statute of limitations.  That only leaves Omar's claim. If, however, the Court determines that Ahmad's ADA failure to accommodate claim was filed within the statute of limitations he, as well Omar, fails to state a plausible claim.

In order to establish a *prima facie* case for failure to accommodate, a plaintiff must establish that: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to continue in the academic program with or without reasonable accommodation; (3) the school knew or had reason to know about his disability; (4) he requested an accommodation; and (5) the school failed to provide the necessary accommodation. *See generally Johnson v. Cleveland City Sch. Dist.*, 443 Fed. Appx. 974, 982 (6th Cir. 2011) (citing *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)). For purposes of this Motion, Defendants assume Plaintiffs' allegations satisfy the first prong.  However, they have not satisfied the remaining prongs.

Plaintiffs fail to set forth factual allegations establishing that they were qualified to continue in Defendants' medical school program (see discussion regarding this factor in Section IV.A.iii., *supra*), that Defendants were aware of any qualifying disability, and that they requested an accommodation.

For the latter two points, "[a] publicly funded university is not required to provide

8

accommodation to a student under the ADA or the Rehabilitation Act until the student provides a proper diagnosis of his claimed disability and specifically requests an accommodation." *Kaltenberg*, 162 F.3d at 437; *see also Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 795 (1st Cir. 1992) ("A relevant aspect of [the reasonableness] inquiry is whether the student ever put the medical school on notice of [her] handicap by making a sufficiently direct and specific request for special accommodations." (internal quotation marks omitted)). Plaintiffs bear the burden of demonstrating that they requested an accommodation. *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042 (6th Cir. 1998).

While Omar alleges he has a "diagnosis of ADHD", Ahmad does not. (Doc. 1, ¶¶ 34, 45, 46, 52). That alone nullifies Ahmad's claim. Regardless, both Plaintiffs fail to allege that, if this is indeed a proper diagnosis of a disability, they ever shared this documentation with, or otherwise produced a diagnosis to, any official at the university. (*Id.*, ¶¶ 34, 53). *See Kaltenberg*, 162 F.3d at 437 ("[T]he College was not obligated to provide accommodation until plaintiff had provided a proper diagnosis of ADHD and requested specific accommodation."). Because the allegations are insufficient to establish that Plaintiffs presented a qualifying diagnosis and requested a specific accommodation, they cannot maintain their ADA accommodation claims.

### v. Plaintiffs fail to state a plausible ADA retaliation claim.

A *prima facie* case of ADA retaliation requires that a plaintiff show first, that he engaged in protected activity; second, that defendant knew of the protected activity; third, that defendant took an adverse action against plaintiff; and, fourth, that there was a causal connection between the protected activity and the adverse action. *A.C. v. Shelby County Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013). For purposes of this Motion, Defendants assume that Plaintiffs' respective

dismissals from the College of Medicine are adverse actions and that they engaged in protected activity.  However, Plaintiffs fail to sufficiently allege the remaining elements.

Plaintiffs must also allege that Defendants had actual knowledge that they engaged in protected activity prior to their dismissals. Their allegations must demonstrate not only that the Defendants as an entity knew of their engagement in the protected activity, but also that the actual decision-maker(s) knew about it as well. *See Almendral v. New York State Office of Mental Health,* 568 F. Supp. 571, 576 (S.D.N.Y. 1983), *aff'd in relevant part,* 743 F.2d 963 (2d Cir.1984) (dismissing retaliation claim when supervisor's poor evaluation was prepared before supervisor knew that plaintiff had filed a discrimination charge); *Cohen v. Fred Meyer, Inc.,* 686 F.2d 793, 797 (9th Cir.1982) (dismissing retaliation claim when decision-maker had no knowledge that employee was engaged in protected activity).

Here, Omar does not identify which university official(s) he complained to only that it occurred during the "appeals process". (Doc. 1, ¶ 56). Similarly, Ahmad does not identify which university official(s) he complained to only that it occurred "before and after his dismissal." (*Id.*, ¶ 42).  Absent more, those allegations do not demonstrate that the Defendants as an entity knew of Plaintiffs' engagement in any purported protected activity, let alone that the actual decision-maker(s), the university official imposing Plaintiffs' dismissals, knew about it as well.

What is more, without identifying the university official imposing Plaintiffs' dismissals, Plaintiffs' bare allegations do not support an inference that Defendants or any actual decision-makers harbored any retaliatory motive. *See EEOC v. Ford Motor Co.,* 782 F.3d 753, 767 (6th Cir. 2015) (applying a but-for causation standard to ADA retaliation claim)*; Feist v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013) (same). In turn, there is no causal connection between Plaintiffs' respective dismissals and their purported protected activity.

10

**B.     Count III - Rehabilitation Act claims.**

In Count III of their Complaint, Plaintiffs allege that Defendants are liable for violating Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "Rehabilitation Act").

**i.     Plaintiffs fail to state a plausible Rehabilitation Act discrimination claim.**

Plaintiffs fail to state a plausible Rehabilitation Act claim. "Claims brought under the Rehabilitation Act are generally reviewed under the same standards that govern ADA claims", with one exception. *Shaikh v. Lincoln Mem. Univ.*, 608 Fed. Appx. 349, 353 (6th Cir. 2015). The Rehabilitation Act more narrowly prohibits discrimination "*solely* by reason of . . . disability." 29 U.S.C. § 794 (emphasis added); *Lewis*, 681 F.3d 312.

Plaintiffs have not alleged that disability was the sole reason for their dismissal from Defendants' medical school program. Plaintiffs allege the "Defendant dismissed and denied Plaintiffs *because of their national origin and race*." (Doc. 1, ¶ 92) (emphasis added).).  It is obvious that Plaintiffs have not and cannot state a claim that they were discriminated against solely because of their disability when they also assert other bases, like national origin and race, as reasons for their dismissals.  *See Yates-Mattingly v. Univ. of Cincinnati*, No. 1:11-cv-753, 2012 U.S. Dist. LEXIS 124101, at *12 (S.D. Ohio Aug. 31, 2012) (dismissing Rehabilitation Act claim because Plaintiff failed to allege that disability was the sole reason for her termination from UC). Nor have they plausibly alleged that their alleged disability was even a reason, let alone the sole reason, for Defendants' alleged discrimination.  Moreover, Plaintiffs cannot make out the remaining elements of a Rehabilitation Act discrimination claim just as they could not make out the elements of their ADA claim. *See* Section IV.A.iii., *supra*.

       **ii.**    **Plaintiffs fail to state a plausible Rehabilitation Act accommodation or retaliation claim.**

The *prima facie* case for failure to accommodate and for retaliation is the same under the Rehabilitation Act as it is under the ADA. *Carten v. Kent State Univ.*, 78 Fed. Appx. 499, 500-501 (6th Cir. 2003) (failure to accommodate); *A.C. v. Shelby County Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013) (retaliation). Thus, Plaintiffs' Rehabilitation Act failure to accommodate and retaliation claims fail for the same reasons their ADA failure to accommodate and retaliation claims fail and likewise must be dismissed.

    **C.**    **Counts V and VI - Title VI of the Civil Rights Act claims.**

In Counts V and VI of their Complaint, Plaintiffs allege Defendants violated Title VI of the Civil Rights Act in three ways: (1) by dismissing Plaintiffs because of their race and national origin; (2) "Defendant's policies regarding the PAC review process are designed to intentionally discriminate against similarly-situated non-white students"; and, (3) "Defendant has a pattern and practice of systemic discrimination regarding students with different national origins during the support, dismissal and appeals processes." (Doc. 1, ¶¶ 92 – 94). Each will be addressed in turn.

       **i.**    **Plaintiffs fail to state a plausible Title VI disparate treatment claim.**

In an educational setting, for a Title VI disparate treatment claim, a plaintiff must prove that: (1) he is a member of a protected class; (2) he suffered an adverse action at the hands of the defendant in his pursuit of his education; (3) he is qualified to continue his pursuit of his education; and (4) he was treated differently from similarly situated students who are not members of a protected class. *Bell v. Ohio State Univ.*, 351 F.3d 240, 252-53 (6th Cir. 2003); *see Guardians Ass'n v. Civil Serv. Comm'n of N.Y.,* 463 U.S. 582 (1983).

In addition to making out a *prima facie* case of discrimination, a plaintiff must also show that the discrimination was intentional. *General Bldg Contractors Ass'n, Inc. v. Pa.,* 458 U.S. 375, 389-91 (1982); *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). Therefore, a Title VI claim is subject to dismissal when it fails to include direct or inferential allegations from which discriminatory intent can be inferred. *Manolov. v. Borough of Manhattan Community College*, 952 F. Supp. 2d 522, 527 (S.D.N.Y. 2013); *see also Manley v. Texas Southern University*, 107 F. Supp. 3d 712, 724 (S.D. Tex. 2015) (dismissing Title VI complaint that lacked fact-specific allegations of causal link between defendant's action and plaintiff's race).

Moreover, conclusory allegations of intentional discrimination without supporting facts do not state a sufficient Title VI claim. *Goonewardena v. New York,* 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007) (dismissing plaintiff's unsupported allegations that professor's actions "show that he . . . has a prejudice toward the plaintiff because of his ethnicity, race, national origin. . . ."); *Easley v. University of Texas at Arlington*, 984 F. Supp. 2d 631 (N.D. Tex. 2013) (allegation without supporting facts that plaintiff/student was "harmed. . . by the decisions of faculty members influenced by/based on race, color, national origin or sex" failed to state Title VI or Title IX claim). Put another way, a Title VI claim should be dismissed when it includes only "speculative assertions" that actions were taken because of a plaintiff's race. *Hodge v. College of Southern Maryland*, 121 F. Supp. 3d 486, 502 (D. Md. 2015) (dismissing Title VI claim that contained "conclusory allegations" of intentional discrimination "devoid of factual support").

For purposes of this Motion, Defendants assume that Plaintiffs sufficiently allege being members of a protected class (*i.e.* Egyptian and Muslim) and they suffered an adverse action (*i.e.* being dismissed from the College of Medicine). Plaintiffs have not sufficiently alleged the third

and fourth prongs: qualified to continue to pursue their education and identified similarly-situated students treated differently.

With regard to the third prong, Plaintiffs were not qualified to continue in the College of Medicine. Their conclusory allegation that they were qualified (Doc. 1, ¶ 91) is inconsistent with Plaintiffs' other allegations that students "struggling" in the College of Medicine, like themselves, are sent before the PAC and subject to dismissal. (*Id.*, ¶¶ 9, 27, 30, 45). In light of the more specific allegations in the Complaint, Plaintiffs have not established that they were qualified to continue in the College of Medicine. *See Lei Ke v. Drexel Univ.*, Case No. 11-6708, 2015 U.S. Dist. LEXIS 118211, *57-58 (E.D. Pa. Sept. 4, 2015).

For the fourth prong, identifying a similarly-situated comparator, Plaintiffs must allege that the same decision-makers, members of their PACs for instance, were "operating under 'the same set of operative facts'" when the same decision-makers decided an alleged comparator's case. *Doe v. Miami Univ.*, 882 F.3d 579, 596 (6th Cir.2018) citing *Doe v. Ohio State Univ.*, 239 F.Supp.3d 1048, 1083 (S.D. Ohio 2017); *see also David v. Neumann Univ.*, 187 F.Supp.3d 554, 561-562 (E.D. Pa. 2016) (a cognizable Title VI complaint requires more than simply alleging that one or more university employees intentionally discriminated based on race). Plaintiffs' Complaint is not just thin on allegations of "the same set of operative facts", there are none alleged for any supposed comparators.

Take Ahmad's allegations. Ahmad alleges he did not receive the same level of counseling as "non-minority students" (*Id.*, ¶ 31), he was forced to take 1.5 years off "which was disproportionate to [the PAC's] treatment of members outside [his] protected class" (*Id.*, ¶ 30), the PAC did not contact his academic advisor to provide support to him during the PAC process but does for "non-minority students" (*Id.*, ¶¶ 32-33), Defendant "forced him to endure an overly

14

burdensome exam schedule" that "other students" were not (*Id.*, ¶¶ 36-37), and Defendant denied

his appeal of the PAC recommendation while a "non-minority student was able to successfully

appeal his dismissal" (*Id.*, ¶¶ 28, 41).

Ahmad's allegations do not provide the "relevant similarity" required to withstand a

motion to dismiss. *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000) (holding that for

individuals to be similarly situated there must be "relevant similarity," but there need not be

"exact correlation"). Ahmad merely alleges he is Muslim, from Egypt, that he was dismissed

from the College of Medicine, and that the same thing did not happen to "other students" or

"non-minority" students. (Doc. 1, ¶¶ 24-41, 44-58). Such allegations do not amount to

intentional discrimination based on race or national origin. As for Omar, he provides only the

insufficient conclusory allegation that "Defendant treated [him] differently than similarly-

situated students who were not minorities." (*Id.*, ¶ 58). Thus, Plaintiffs fail to state a Title VI

disparate treatment claim.

### ii. Plaintiffs fail to state a plausible Title VI disparate impact claim.

To the extent Plaintiffs are claiming Defendants' PAC review process policies have a

disparate impact on non-white students, that Title VI claim fails as a matter of law. There is no

disparate impact private right of action under Title VI. *Alexander v. Sandoval*, 532 U.S. 275

(2001) (finding no disparate impact private right of action under Title VI).

Moreover, Plaintiffs provide no allegations showing Defendants' otherwise facially

neutral policies were adopted by relevant decision-makers because the policies would adversely

affect an identifiable group. *See Personnel Adminstrator of Massachusetts v. Feeney*, 442 U.S.

256, 279 (1979) (to prove intentional discrimination by a facially neutral policy, a plaintiff must

show that the relevant decision-maker (e.g. the University Board of Trustees), adopted the policy

at issue because of its adverse effects upon an identifiable group). Thus, Plaintiffs fail to state a Title VI claim based on Defendants' PAC review process policies.

### iii. Plaintiffs fail to state a plausible Title VI pattern or practice claim.

Title VI, unlike Title VII, does not expressly include a "pattern or practice" claim. *Compare* 42 U.S.C. § 2000e-6(A) *with* 42 U.S.C. § 2000d. Nor has the undersigned counsel's research located a controlling Sixth Circuit opinion finding otherwise. Even if this Court applied the pattern or practice method of proof here, Plaintiffs' allegations do not demonstrate that race or national origin discrimination was Defendants' "standard operating procedure" when dismissing students from the College of Medicine. *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 336 (1977).

According to Plaintiffs, Defendants' PACs recommended the dismissal of 8 students from 2016 to 2018, 7 "non-white American" minorities and 1 "white student". (Doc. 1, ¶¶ 16, 17, 19). Plaintiffs were dismissed during the applicable time frame so their cases are presumably included in the count. Of the 8 students' cases only 3 students appealed their PAC's recommendation. Those three students are Plaintiffs and a "white student". (*Id.*, ¶¶ 19, 28, 55). The "white student successfully appealed his recommended dismissal", the Plaintiffs did not. (*Id.*, ¶ 19). Presumably, Plaintiffs are alleging that these raw numbers show a pattern or practice of race and national origin discrimination. They do not. Without any context for the numbers there is no way of telling if the numbers have any practical significance. *See Hazelwood Sch. Dist. v. United States*, 433 U.S. 299 (1977); *Thomas v. Metroflight, Inc.*, 814 F.2d 1506 (10th Cir. 1987).

Even if Plaintiffs' alleged numbers show a disparate impact on "non-white American" minorities—which Defendants do not concede because Plaintiffs provide no information on the

16

demographic makeup of the College of Medicine as a whole from 2016 to 2018, among other things—the numbers must be coupled with "anecdotal evidence of the [Defendants'] intent to treat the protected class unequally." *Mozee v. Am. Commercial Marine Serv. Co*, 940 F.2d 1036, 1051 (7th Cir. 1991). As previously explained in Section IV.C.i., *supra*, Plaintiffs' Complaint lacks well-pleaded, non-conclusory allegations from which it can be reasonably inferred that the Defendants intentionally discriminated against them based on their race (*i.e.* Muslim) or national origin (*i.e.* Egypt). Nor have they alleged that Defendants intentionally discriminated against other students based on their race or national origin. In other words, Plaintiffs fall woefully short of bringing "the cold numbers *convincingly* to life". *Teamsters,* 431 U.S. at 339 (emphasis added); *see also Barnes v. Gencorp, Inc.*, 896 F.2d 1457, 1469 (6th Cir.1990) (explaining why statistics so often fail: the statistical method may be faulty and chance may be a more likely explanation for a statistical disparity; the statistic may not meaningfully overcome the presumption that a non-discriminatory reason was the motivator; and, as a factual matter, race discrimination simply may not have actually played a role in the decision in question.).

### iv. Plaintiffs fail to state a plausible Title VI retaliation claim.

Title VI does not explicitly provide for a private right of action for retaliation. *Guardians Ass'n,* 463 U.S. at 593-95. And, the Sixth Circuit has not addressed whether Title VI provides a private right of action for retaliation. *Cf. Caldwell v. Knox County Bd. of Educ.*, No. 3:13-cv-552, 2014 U.S. Dist. LEXIS 103089 (E.D. Tenn. July 29, 2014) (examining Title VI retaliation claim without determining if cause of action exists under Title VI).

Even if it does, there is no retaliation here. In order to bring a claim for retaliation under Title VI, a plaintiff must demonstrate a *prima facie* case by showing the following elements: (1) plaintiff's engagement in protected activities; (2) defendant's knowledge of plaintiff's protected

activities; (3) defendant's adverse action against plaintiff; and (4) a causal connection between plaintiff's protected activities and defendant's adverse actions demonstrating a retaliatory motive. *Davis v. Halpern,* 768 F. Supp. 968, 985 (E.D.N.Y. 1991).

For purposes of this Motion, Defendants assume that Plaintiffs' respective dismissals from the College of Medicine are adverse actions. However, Plaintiffs fail to sufficiently allege the remaining elements of their *prima facie* case.

### a. Plaintiffs did not engage in a protected activity.

Omar alleges that "[d]uring his appeals process, [he] confronted Defendant for…treating him differently." (Doc. 1, ¶ 56). Ahmad alleges that "[b]efore and after his dismissal, [he] did complain that he … was different treatment (sic) than non-minority students." (*Id*., ¶ 42).

Plaintiffs' generic complaints about being treated differently are insufficient to constitute protected activity. *See Barber v. CSX Distr. Servs*., 68 F.3d 694, 702 (3d Cir. 1995) (finding that "[a] general complaint of unfair treatment does not translate into a charge of illegal age discrimination"); *Willoughby v. Allstate Ins. Co*., 104 Fed. Appx. 528, 531 (6th Cir. 2004); *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir. 2008) ("if no reasonable person could have believed that the underlying incident complained about constituted unlawful discrimination, then the complaint is not protected."); *Lei Ke,* 2015 U.S. Dist. LEXIS 118211, at *121.

### b. Plaintiffs have not alleged Defendants knew about any alleged protected activity nor alleged a causal connection.

Plaintiffs must also prove that Defendants had actual knowledge that they engaged in protected activity prior to their dismissals. Their allegations must demonstrate not only that the Defendants as an entity knew of their engagement in the protected activity, but also that the

actual decision-maker(s) knew about it as well. *See Almendral,*, 568 F. Supp. at 576; *Cohen,* 686 F.2d at 797, *supra.*

Here, Omar does not identify which university official(s) he complained to only that it occurred during the "appeals process." (Doc. 1, ¶ 56). Similarly, Ahmad does not identify which university official(s) he complained to only that it occurred "before and after his dismissal." (*Id.*, ¶ 42). Absent more, those allegations do not demonstrate that the Defendants as an entity knew of Plaintiffs' engagement in any purported protected activity, let alone that the actual decision-maker(s), the university official imposing Plaintiffs' dismissals, knew about it as well.

What is more, without identifying the university official imposing Plaintiffs' dismissals, Plaintiffs' bare allegations do not support an inference that Defendants or any actual decision-makers harbored any racially retaliatory motive. In turn, there is no causal connection between Plaintiffs' respective dismissals and their purported protected activity.

**D.    Counts VIII and IX - declaratory and injunctive relief.**

Plaintiffs' claims for declaratory relief cannot survive since those claims rest on their flawed ADA, Rehabilitation Act, and Title VI claims. The Sixth Circuit has held that "§ 2201 [the Declaratory Judgment Act] does not create an independent cause of action." *Davis v. United States,* 499 F.3d 590, 594 (6th Cir. 2007); *see also Smith v. Bd. of Trustees Lakeland Cmty. Coll.*, 746 F. Supp. 2d 877, 899 (N.D. Ohio 2010) ("it is axiomatic that [plaintiff] cannot assert two separate counts alleging the exact same claims"). Since Plaintiffs fail to state plausible Title VI, ADA, or Rehabilitation Act claims, and those are identical to their declaratory relief claims, their declaratory relief claims must also be dismissed.

Plaintiffs' injunctive relief claim is not a cause of action. It is a remedy and requires dismissal. *See Reyes v. Wilson Mem. Hosp.,* 102 F.Supp.2d 798, 801 n. 1 (S.D. Ohio 1998); *Goryoka v. Quicken Loan, Inc.*, 519 Fed. Appx. 926, 929 (6th Cir. 2013).

**E.      Counts IV and VII – state law claims.**

Plaintiffs allege that Defendants are liable for state law breach of contract and violations of Ohio's disability discrimination laws found in R.C. Chapter 4112. (Doc. 1, ¶¶ 83-88, 103-108). These claims must be dismissed because the Court lacks subject matter jurisdiction.  Only the Ohio Court of Claims would have jurisdiction over an Ohio law breach of contract or disability discrimination claim against Defendants. Ohio Rev. Code § 2743.02(A)(1).  Moreover, Plaintiffs' Ohio law claims against Defendants are barred by sovereign immunity.  *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984); *Al-Maqablh v. Univ. of Cincinnati College of Medicine*, No. 1:11-cv-531, 2012 U.S. Dist. LEXIS 181067, at *6 (S.D. Ohio Dec. 21, 2012).

**V.      Conclusion.**

For each and all of the reasons set forth above, Defendants respectfully request that the Court dismiss Plaintiffs' claims against them in their entirety.

Respectfully submitted,

**MICHAEL DEWINE (0009181)**
**Ohio Attorney General**

*s/ Reid T. Caryer*
_____
REID T. CARYER (0079825)
ELIZABETH HOWELL (0092605)
Assistant Attorneys General
Education Section
30 E. Broad St., 16th Floor
Columbus, Ohio 43215
Phone:  (614) 644-7250
Fax: (614) 644-7634
reid.caryer@ohioattorneygeneral.gov
elizabeth.howell@ohioattorneygeneral.gov

*Counsel for Defendants*


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically on October 4, 2018.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's systems.


*s/ Reid T. Caryer*
_____
REID T. CARYER (0079825)
Assistant Attorney General