**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **AHMAD SAQR, et al.** | : | CASE NO. 1:18-cv-00542 |
| Plaintiffs, | : | JUDGE: Susan J. Dlott |
| -vs- | : | |
| **THE UNIVERSITY OF CINCINNATI, et al.** | : | |
| | : | |
| Defendants. | | |

---

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**

---

Respectfully Submitted,

/s/Brian P. Gillan
Brian P. Gillan (0030013)
FREKING MYERS & REUL LLC
600 Vine Street, 9th Floor
Cincinnati, Ohio 45202
PH: 513/721-1975 – FX: 513/651-2570
*bgillan@fmr.law*

-and-

Matthew-Miller Novak (0091402)
GODBEY & ASSOCIATES
708 Walnut Street, Suite 600
Cincinnati, Ohio 45202
PH: 513/241-6650 – FX: 513/241-6649
*Matt@godbeylaw.com*

***Co-Counsel for Plaintiffs***

## I.     <u>INTRODUCTION</u>

Plaintiffs Ahmad and Omar Saqr, by and through undersigned counsel, submit this Memorandum in Opposition to Defendants' Motion to Dismiss.  As set forth more fully below, Defendants' motion is without merit and should be denied. Plaintiffs' ADA claims are not barred by Eleventh Amendment Immunity, nor are Ahmad Saqr's claims for failure to accommodate under the ADA and the Rehabilitation Act barred on statute of limitations grounds.  Defendants' remaining arguments are likewise without merit given that Defendants erroneously seek to impose a heightened pleading requirement based on the *prima facie* elements of the discrimination and retaliation claims alleged in the Complaint, rather than the notice pleading standard recognized by this Court and the Sixth Circuit under prevailing Supreme Court precedent.     Accordingly, Defendants' motion should be denied.

## II.    <u>LAW AND ARGUMENT</u>

When ruling on a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true. *See Harbin–Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir. 2005). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)); *Mitchell v. City of Hamilton*, No. 1:11-CV-764, 2012 WL 701173, at *2 (S.D. Ohio Mar. 1, 2012) (Dlott, J.). Thus, to withstand a dismissal motion, a complaint "does not need detailed factual allegations," but it must "contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555

(2007); *Harvard v. Wayne Cty.*, 436 Fed. Appx. 451, 457 (6th Cir. 2011).  The Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Twombly,* 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949.

A.   **Defendants are Not Entitled to Immunity on Plaintiffs' ADA Claims**

Congress may abrogate the states' Eleventh Amendment sovereign immunity pursuant to the enforcement provisions of § 5 of the Fourteenth Amendment when Congress both "unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Bd. of Trs. of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363 (2001) (quoting *Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 73 (2000)). Congress has expressed an unequivocal desire to abrogate Eleventh Amendment immunity for violations of the ADA. 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter."); *Carten v. Kent State Univ.,* 282 F.3d 391, 394 (6th Cir. 2002); *Tennessee v. Lane,* 541 U.S. 509, 533–34 (2004) (Title II claim alleging denial of "the fundamental right of access to the courts" not barred); *United States v. Georgia,* 546 U.S. 151, 159 (2006) (Title II claim not barred to the extent that the ADA-violating conduct also violates the Fourteenth Amendment); *Mingus v. Butler,* 591 F.3d 474, 483 (6th Cir. 2010) (recognizing valid abrogation of Title II for challenges under rational basis review for purposes of sovereign immunity).

In *Georgia*, the Supreme Court instructed the lower courts that any alleged misconduct that violates both Title II and a plaintiff's constitutional rights under the Fourteenth Amendment can proceed under Congressional abrogation of immunity but that courts must determine, "insofar as

such misconduct violated Title II but did *not* violate the Fourteenth Amendment, whether Congress' purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Id*. at 159 (emphasis added); *W.H. by & through M.H. D.R. v. Tennessee Dep't of Educ.*, No. 3:15-1014, 2016 WL 236996, at *8 (M.D. Tenn. Jan. 20, 2016). The *Georgia* Court set forth a three-part test courts should apply when assessing whether the Eleventh Amendment proscribes an ADA Title II claim:

> [D]etermine ... on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

546 U.S. at 159; *see also Babcock v. Michigan*, 812 F.3d 531, 533–35 (6th Cir. 2016) (applying three part test enunciated by Supreme Court in *Georgia*).

The first step in the Eleventh Amendment analysis is to determine which aspects, if any, of defendants' alleged conduct violated Title II. *Babcock*, 812 F.3d at 535. ADA Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

In this case, Plaintiffs have plainly alleged that they were denied access to a program of education at the University of Cincinnati, College of Medicine, (a program that receives federal funds), by virtue of having been denied accommodation for their disabilities and subsequently dismissed from the medical school program. (Doc. 1, PageID 2, Compl. ¶¶ 4-5). Specifically, Ahmad alleges that he has ADHD, requested accommodation, was forced to endure an overly burdensome exam schedule that other students without disability were not forced to undergo, and that he was subject to hostility and discouraged from seeking accommodation for his disability.

4

(Id. at PageID 5-6, Compl. ¶¶ 34-40).  Similarly, Omar alleges that he suffers from a learning disability for which he likewise sought reasonable accommodation and the University refused to provide him with any support.  (Id. at PageID 6-7, Compl. ¶¶ 46-54; see also PageID 7-8, Compl. ¶¶ 59-68).  These allegations support a violation of Title II.  Likewise the allegations in the Complaint support an inference that Plaintiffs were treated differently because of their disability compared to other students who requested accommodations, and specifically other non-minority students.  Accordingly, under *Georgia* and *Mingus*, *supra*, Defendants are not entitled to sovereign immunity on Plaintiffs' ADA Title II claims.

Even if this Court does not construe the allegations in the Complaint to allege a constitutional violation, abrogation is nevertheless valid for Plaintiffs' ADA Title II claims.  *See W.H. by & through M.H. D.R.*, No. 3:15-1014, 2016 WL 236996, at *8-9.  The majority of circuits to address the issue post-*Georgia* have concluded that abrogation of immunity for Title II claims is enforceable in the context of claims that do not involve constitutional violations but arise in the context of public education.  *See Bowers v. Nat'l Collegiate Athletic Ass'n,* 475 F.3d 524, 555 (3d Cir. 2007) (holding that immunity was abrogated with respect to a Title II claim involving a disabled student's access to a sports program at a public institution of higher education because, "as applied to education, Title II is a congruent and proportional means of preventing and remedying the unconstitutional discrimination that Congress found to exist both in education and in other areas of governmental services, many of which implicate fundamental rights"); *Toledo v. Sanchez*, 454 F.3d 24, 40 (1st Cir. 2006) (holding that abrogation applied to a claim for failure to reasonably accommodate a disabled university student and stating that "Title II, as it applies to the class of cases implicating the right of access to public education, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment"); *Constantine v.*

*Rectors & Visitors of George Mason Univ.,* 411 F.3d 474 (4th Cir. 2005) (abrogating immunity for a Title II claim involving denial of accommodations for college student with a medical condition); *Assn'n for Disabled Americans v. Fla. Int'l Univ.,* 405 F.3d 954, 959 (11th Cir. 2005) (holding that abrogation applied to a Title II claim given the documented history of unequal treatment of disabled persons in public education and finding that "[t]he relief available under Title II of the ADA is congruent and proportional to the injury and the means adopted to remedy the injury"); *see also Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 195 n. 9 (2d Cir. 2015) (remanding for consideration of *Georgia* factors as applicable and recognizing that other circuits hold abrogation of state sovereign immunity under Title II in the context of discrimination in access to public higher education for individuals with disabilities falls within Congress's enforcement power under the Fourteenth Amendment); C*unningham v. Univ. of New Mexico Bd. of Regents*, 779 F. Supp. 1273, 1279-80 (D. N.M. 2011) (finding ADA Title II a valid abrogation of state's sovereign immunity where plaintiff asserted ADA claims regarding his access to higher education centered on medical school education and testing); *Novak v. Bd. of Trustees of S. Illinois Univ.*, No. 12-CV-7-JPG, 2012 WL 5077649, at *5–8 (S.D. Ill. Oct. 18, 2012) (examining validity of abrogation of state sovereign immunity under *Lane* and *Georgia* and finding that immunity validly abrogated in case alleging denial of access to program in post-graduate education given documented history of disability discrimination by States and nonstate governmental entities and congruent and proportional remedy imposed by Congress, to wit: access to education); *Sarkissian v. W. Virginia Univ. Bd. of Governors*, No. CIV.A. 1:05CV144, 2007 WL 1308978, at *8 (N.D.W. Va. May 3, 2007)(in case alleging failure to accommodate ADHD of resident in medical school program, court held that after *Constantine,* settled law in Fourth Circuit

that States do not have immunity from claims pursuant to Title II of the ADA, as it applies to the provision of public higher education).

In this case, like those cited above, Plaintiffs' claims under Title II of the ADA are grounded in allegations of discriminatory treatment in the College of Medicine based on Plaintiffs' disability, notably Defendants' failure to accommodate their disabilities, thereby eventually depriving them of access to the medical school program altogether.  Accordingly Defendants are not entitled to sovereign immunity on these claims.

Relying on the erroneous conclusion that they are entitled to immunity on their ADA Title II claims, Defendants assert that they are also entitled to immunity on Plaintiffs' ADA Title V claims as well.  This argument is likewise without merit.  Courts addressing immunity from Title V claims predicated on Title II claims have extended *Lane* and *Georgia* to Title V retaliation claims, holding that Congress abrogated states' immunity for these claims.  *See Lors v. Dean*, 746 F.3d 857, 864 (8th Cir. 2014); *Bylsma v. Haw. Pub. Hous. Auth.*, 951 F. Supp. 2d 1116, 1121 (D. Haw. 2013); *McCollum v. Owensboro Cmty. & Technical Coll.*, No. 4:09CV-001210-M, 2010 WL 5393852, at *3 (W.D. Ky. Dec. 22, 2010); *Demby v. Md. Dep't Health & Mental Hygiene*, No. CCB-06-1816, 2009 WL 415265, at *1 (D. Md. Feb. 13, 2009); *Sarkissian v. W.V. Univ. Bd. of Governors*, No. 1:05CV144, 2007 WL 1308978, at *8 (N.D.W. Va. May 3, 2007).   As the *McCollum* court noted, "[t]he majority of the courts when confronted with this question considered the underlying discrimination a plaintiff opposed in determining whether a plaintiff's retaliation claim under § 12203 of the ADA is barred by the Eleventh Amendment" concluding that where the underlying retaliation claim is predicated on alleged violations of Title II of the ADA, then the Title II abrogation of immunity is extended to ADA Title V retaliation claims. *McCollum*, 2010 WL 5393852, at *2–3 (citing *Demby, supra*); *Bennett v. Bd. of Educ. of Washington Cty. Joint*

7

*Vocational Sch. Dist.*, No. 08CV663, 2010 WL 3910364, at *4 (S.D. Ohio Oct. 4, 2010) (the language of 42 U.S.C. § 12203(c) demonstrates that Congress intended the enforcement remedies and procedures established for Title II violations to be applied to those who have suffered retaliation for objecting to acts or practices which violate Title II, such that if a claimant opposes acts made unlawful by Title II of the ADA, and as a result suffers retaliation, it is Title II of the ADA that underlies the individual's Title V claim regardless of the form of retaliation visited upon the individual) (internal quotations omitted).

In this case, as in *McCollum*, the facts alleged in the Complaint demonstrate that Plaintiffs' retaliation claims were predicated on Title II of the ADA.  The Complaint alleges that Plaintiffs objected to the University's refusal to provide them with any reasonable accommodation for their disabilities and the hostile and disparate treatment they received from University officials when they sought to challenge the lack of accommodation during their academic appeal processes. "Plaintiff[s'] retaliation claim[s] under Title V of the ADA [are] predicated on an underlying alleged violation of Title II by [Defendants], not Title I.  Therefore, because the State is not immune from an underlying Title II discrimination claim, the State is also not immune from [Plaintiffs'] claim[s] alleging retaliation due to [their] opposition of that conduct." *McCollum*, 2010 WL 5393852, at *3.

B.  <u>Plaintiff Ahmad Saqr's Claims Are Not Barred by the Statute of Limitations</u>

Ahmad's Saqr's ADA and Rehabilitation Act claims are not barred by the statute of limitations.  Ahmad alleges that the University subjected him to disparate treatment, failed and refused to accommodate his disability, and eventually terminated him from the program because of his disability.  (Doc. 1, PageID 4-6).  The Complaint further alleges that when Ahmad made the Defendants aware of his need for accommodation, he was forced to undergo a burdensome and

disparately onerous exam schedule which set him up for academic failure and then subsequently dismissed him from the program. (Id. at PageID 5-6). The Complaint further alleges that after he was dismissed from the program on August 4, 2016, his brother was subject to retaliation for Complaints Ahmad made regarding the discriminatory nature of his dismissal. (Id. at PageID 8-9). Contrary to Defendants' arguments, as noted in the Complaint, the final PAC decision to dismiss Ahmad from the Medical School program was rendered on August 4, 2016, following an appeal hearing on August 2, 2016. (Doc. 1, PageID 4, Compl. ¶ 28). The decision to recommend Ahmad for dismissal made on June 29, 2016 was not a final decision as the Complaint makes clear that students have a right to appeal a PAC's initial recommendation for dismissal made to the Dean of the Medical School.[1] (Doc. 1, PageID 3, Compl. ¶¶ 9-15). Accordingly, Ahmad's allegations of ADA and Rehabilitations Act violations based on failure and refusal to accommodate and discriminatory dismissal asserted in the Complaint, which was filed on August 3, 2018, fall within the applicable two year statute of limitations.

C. **Plaintiffs Have Stated Plausible ADA and Rehabilitation Act Claims Under The Prevailing Notice Pleading Standard Recognized By The Sixth Circuit**

Defendants' extensive arguments that Plaintiffs have failed to present plausible claims because they have not set forth allegations in support of each of the prima facie elements of their claims brought under the ADA, Rehabilitation Act, and Title VI of the Civil Rights Act, contravene clear Sixth Circuit precedent post-*Twombly* and are wholly without merit.

---

[1] To the extent Defendants continue to insist that the accrual date for the statute of limitations is June 29, 2016, when the PAC made an initial recommendation for dismissal to the Dean, Plaintiff Ahmad Saqr would respectfully ask the Court for leave to amend his complaint to add a claim for violation of his Due Process rights as this argument by Defendants supports the conclusion that Ahmad's dismissal was a forgone conclusion, notwithstanding his right to appeal and therefore a sham proceeding giving rise to claims for procedural due process violations.

In *Keys v. Humana, Inc.*, the Sixth Circuit reviewed a district court decision granting a motion to dismiss based on the Plaintiff's failure to establish a prima facie case as to discrimination claims alleged.  684 F.3d 605, 609 (6th Cir. 2012). The Court clearly explained:

> The district court's requirement that Keys's complaint establish a prima facie case under *McDonnell Douglas* and its progeny is contrary to Supreme Court and Sixth Circuit precedent. In *Swierkiewicz v. Sorema,* the Supreme Court unanimously held that the prima facie case under *McDonnell Douglas* is an evidentiary standard, not a pleading requirement. 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). As the Court reasoned, **"it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case."** *Id.* at 511, 122 S.Ct. 992. The Court explained that the precise requirements of a prima facie case can vary depending on the context and before discovery has unearthed the relevant facts and evidence, it may be difficult to define the appropriate formulation. *Id.* at 512, 122 S.Ct. 992. **Significantly, the Supreme Court identified the possibility that discovery may produce direct evidence of discrimination, rendering the *McDonnell Douglas* burden-shifting framework inapplicable to a plaintiff's claims. *Id.* at 511–12, 122 S.Ct. 992. The Supreme Court concluded that the ordinary rules of notice pleading apply and upheld the complaint because it gave "fair notice" of the basis of the plaintiff's claims.** *Id.* at 514, 122 S.Ct. 992.
>
> **The Supreme Court's subsequent decisions in *Twombly* and *Iqbal* did not alter its holding in *Swierkiewicz*. *Twombly* distinguished *Swierkiewicz,* explaining that the prior case "did not change the law of pleading," but simply reemphasized that application of the *McDonnell Douglas* prima facie case at the pleading stage "was contrary to the Federal Rules' structure of liberal pleading requirements." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955 (explaining that a plaintiff need not allege "'specific facts' beyond those necessary to state [her] claim and the grounds showing entitlement to relief"). Since *Twombly* and *Iqbal,* we have also recognized the continuing viability of *Swierkiewicz*'s holding.** *See, e.g., Pedreira,* 579 F.3d at 728 (holding that the *McDonnell Douglas* prima facie case is not a pleading requirement and that "the ordinary rules for assessing the sufficiency of a complaint apply"); *Back v. Hall,* 537 F.3d 552, 558 (6th Cir.2008) (same). Recently, in *HDC, LLC v. City of Ann Arbor,* we again recognized the applicability of *Swierkiewicz* 's holding and further noted that it would be "inaccurate to read [*Twombly* and *Iqbal* ] so narrowly as to be the death of notice pleading and we recognize the continuing viability of the 'short and plain' language of Federal Rule of Civil Procedure 8." 675 F.3d 608, 614 (6th Cir.2012). **Therefore, it was error for the district court to require Keys to plead a prima facie case under *McDonnell Douglas* in order to survive a motion to dismiss.**

684 F.3d at 609-10 (emphasis added).

This Court has likewise expressly held that neither *Iqbal* nor *Twombly* requires a plaintiff to plead all the facts that support their claim.  Rather, Plaintiffs merely need to allege facts giving defendant fair notice of the nature of their claims and raising an inference that their claims are plausible.  *Gross v. Nationwide Credit, Inc.*, No. 1:10-CV-00738, 2011 WL 379167, at *1–3 (S.D. Ohio Feb. 2, 2011) (Spiegel, J.) (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (A complaint must provide sufficient notice to the defendant of the nature of the plaintiff's claims.  "The federal rules still provide for notice pleading, not fact pleading, and *Iqbal* and *Twombly* did not rewrite the rules. What *Iqbal* and *Twombly* do require is that plaintiffs provide factual allegations from which a court may plausibly infer a cause of action.").

In this case, Plaintiffs have alleged that they are each disabled, they advised Defendants of their disabilities and the need for accommodation, defendants failed or refused to accommodate them and they were subject to disparate treatment compared to non-disabled and non-minority students in the program and eventually dismissed from the College of Medicine.  Plaintiff Ahmad Saqr specifically alleges that he was treated more harshly by the PAC when he sought support and accommodation, including a longer suspension time and a more onerous exam schedule, in addition to being met with hostility for requesting accommodation meant to discourage him from pursing his rights under the ADA and Rehabilitation Act, and that he made complaints to university officials regarding this discriminatory treatment which resulted in retaliatory acts, including a harsher exam schedule and eventual dismissal from the program.  Similarly, Omar Saqr has specifically alleged that he was diagnosed with multiple mental health conditions which constitute a disability, that he advised Defendants of his disability and need for accommodations, that Defendants failed and refused to engage in any process to provide him with accommodation, telling him to address his condition himself, and retaliated against him for opposing their failure

to accommodate him and for his brother's charges of disparate and discriminatory treatment following Ahmad's dismissal. These allegations are sufficient to put Defendants on notice of the ADA and Rehabilitation Act claims against them and raise a plausible claim above the speculative level. As the Court noted in *Gross*, "[t]he complaint need not contain 'detailed factual allegations'." 2011 WL 379167, at *3 (court noted that while Defendant was correct that the complaint did not allege how many times Plaintiff called or how long he was put on hold, "**at this stage in the litigation such factual specificity is not required**.") (emphasis added).

As this Court is well aware, the purpose of discovery is for Plaintiffs to have an opportunity to develop the factual record to support their claims and Plaintiffs cannot be held to account and have their claims summarily dismissed for their alleged inability to set forth specific facts to "establish" each *prima facie* element of their claim at this stage of the litigation. Clearly the law does not require a plaintiff to have all the facts to support his case at the outset of the litigation. Finding that Plaintiffs' retaliation claims must fail because they have not identified the University officials to whom they complained and therefore cannot prove the University had notice of their complaints as Defendants argue, for example, would require a discrimination plaintiff to state factual details that are rightfully subject to the discovery process. *Gross*, *supra*. Accordingly, Defendants' lengthy arguments that Plaintiffs have failed to state claims under the ADA or Rehabilitation Act because they have not set forth allegations with respect to each *prima facie* element are without merit and should be rejected.

### D. Plaintiffs Have Stated Plausible Title VI Claims

Plaintiffs' Title VI claims allege intentional discrimination based on Plaintiffs' national origin and race (Egyptian Muslim).[2] These claims are supported by specific allegations that non-

---

[2]      Count V of the Complaint is captioned "National Origin and Race Discrimination." This label is a scrivener's error insofar as the claim should more properly be labelled "National Origin, Ethnicity, and Religious

minority students were not subject to the same academic disciplinary actions as Plaintiffs and that the Medical College has a history of both failing to provide equal accommodations to minority students compared to non-minority students and evidence that Defendants dismiss minority students from the Medical School program at a significantly higher rate than non-minority students.  (See Doc. 1, PageID 3-4, Compl. ¶¶ 16-24, 41-444, 58, 89-102).  Plaintiffs have not alleged a disparate impact claim; rather, these allegations give rise to an inference that there is a pattern and practice of dismissing minority students from the program which supports Plaintiffs' claims that they were subject to intentional discrimination when they were likewise denied the supports and accommodations afforded non-minority students and ultimately dismissed from the program because of their Egyptian, Muslim identity.

Contrary to Defendants' assertions, at this stage of the litigation, Plaintiffs need not identify named comparators who were treated more favorably in order to state a viable claim.  (See generally Doc. 6, PageID 33-35).  As discussed above, given their claims of discrimination in violation of Title VI, Plaintiffs' claims should not be dismissed for lack of facts establishing the *prima facie* elements of a Title VI claim.  The discovery process is designed to lead to additional evidence in support of plaintiffs' allegations, and, as the *Keys* court explicitly recognized, may even lead to direct evidence of discrimination.  Accordingly, as with Defendants argument regarding Plaintiffs' ADA and Rehabilitation Act claims, dismissal for failure to allege specific facts in support of each *prima facie* element is not warranted under the notice pleading standards established by applicable Supreme Court and Sixth Circuit precedent.  *See Keys*, *supra*.

---

Discrimination" given the recognition that Plaintiffs' status as Egyptian relates to their national origin and ethnicity whereas Muslim status refers to their religion.  This does not change the substantive analysis under prevailing case law but recognizes that "Egyptian Muslim" refers to national origin, ethnicity, and religious affiliation, not "race" as that term is generally understood.

Finally, Defendants' arguments that Plaintiffs' state law claims and claims for injunctive and declaratory relief should be rejected.  These arguments are premised on the erroneous conclusion that Plaintiffs' ADA, Rehabilitation Act and Title VI claims are subject to dismissal. As demonstrated above, dismissal of these claims is not warranted.

## III.    CONCLUSION

For all the foregoing reasons, Defendants' Motion to Dismiss should be denied.


Respectfully Submitted,


/s/Brian P. Gillan
Brian P. Gillan (0030013)
FREKING MYERS & REUL LLC
600 Vine Street, 9th Floor
Cincinnati, Ohio 45202
PH: 513/721-1975 – FX: 513/651-2570
bgillan@fmr.law

-and-

Matthew-Miller Novak (0091402)
GODBEY & ASSOCIATES
708 Walnut Street, Suite 600
Cincinnati, Ohio 45202
PH: 513/241-6650 – FX: 513/241-6649
Matt@godbeylaw.com

***Co-Counsel for Plaintiffs***


### CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. mail, e-mail and/or facsimile to those parties who are not served via the Court's electronic filing system.  Parties may access this filing through the Court's System.


/s/Brian P. Gillan
Brian P. Gillan