## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**AHMAD SAQR, *et al.*,**

        **Plaintiffs,**

      **v.**

**UNIVERSITY OF CINCINNATI,
*et al.*,**

        **Defendants.**

      **Case No. 1:18-cv-542**
      **JUDGE DOUGLAS R. COLE**
      **Magistrate Judge Bowman**

## OPINION AND ORDER

This cause comes before the Court on Magistrate Judge Bowman's September 23, 2019 Report and Recommendation ("R&R")[1] (Doc. 30), to which no party has objected, and which recommends that this Court grant Defendants' Motion for Judgment on the Pleadings (Doc. 19). Also before the Court is a second R&R, which Magistrate Judge Bowman issued on December 2, 2019 (Doc. 40), and which recommends that this Court deny the Saqrs' Motion for Leave to File an Amended Complaint (Doc. 28). Plaintiffs Omar and Ahmad Saqr have objected to this second R&R. (*See* Doc. 42).

For the reasons stated more fully below, the Court **OVERRULES** the Saqrs' Objection (Doc. 42) and **ADOPTS** both Magistrate Judge Bowman's September 23, 2019 R&R and her December 2, 2019 R&R (Docs. 30, 40). As a result, the Court

---

[1] Magistrate Judge Bowman has issued three Report and Recommendations in this action. (*See* Docs. 19, 30, 40). The Court uses "Report and Recommendation" as a general term, denoted "R&R." In each instance that the Court discusses a specific R&R in this Opinion, the Court will clarify the specific R&R to which it refers.

**GRANTS** Defendants' Motion for Judgment on the Pleadings (Doc. 19) and **DENIES** the Saqrs' Motion for Leave to File an Amended Complaint (Doc. 28). Accordingly, the Court **DISMISSES** the Saqrs' claims set forth in their Complaint, except for Ahmad Saqr's discrimination claim arising under Title VI of the Civil Rights Act.

## BACKGROUND

Ahmad and Omar Saqr are brothers who share many similarities. Of particular relevance to this case, both are Egyptian Muslims who suffer from anxiety and Attention Deficit Hyperactivity Disorder. Both Saqrs also were briefly students at Defendant University of Cincinnati's ("UC") College of Medicine. Both performed poorly as students there, which they claim was due to their disability. The brothers' struggles with their studies ultimately led them both to the same place—separate meetings with UC's Performance and Advancement Committee (the "PAC"). The PAC separately recommended that UC dismiss the Saqrs from the College of Medicine—announcing its decision as to Ahmad in June 2016, and as to Omar in November 2017.[2] Both brothers appealed the PAC's recommendations. And UC then overruled both of those appeals and adopted the PAC's recommendations. Now, both Saqrs allege that their dismissals were unlawful.

The Saqrs initiated this action on August 3, 2018, when they filed a Complaint (Doc. 1) alleging that UC breached a contract (the school's handbook), as well as discriminated and retaliated against them in violation of Titles II and V of the

---

[2] The Complaint says November 2018, but it is clear from the remainder of the sentence (which says that the dismissal became final in January of 2018) that the PAC decision as to Omar occurred in November 2017. (Doc. 1, ¶ 45, #6).

Americans with Disabilities Act ("ADA"), the Rehabilitation Act, Title VI of the Civil Rights Act, and corresponding Ohio law, by failing to remedy the school's pattern and practice of discriminating against students based on (1) their disabilities and (2) their national origins. (Compl., Doc. 1, ¶ 1, #2). More specifically, the Saqrs claim that UC "fails to provide equal accommodations to minority students" and "disproportionately dismisses these minorities compared to its non-minority students, as well as in comparison to other regional medical programs." (*Id.*).

Since the Saqrs filed this action, UC has twice moved to dismiss the Saqrs' claims, and the Saqrs subsequently moved to amend their allegations. Accordingly, Magistrate Judge Bowman has issued three R&Rs in this case. (*See* Docs. 11, 30, 40).

The First R&R (Doc. 11), dated February 20, 2019, addressed UC's Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (Doc. 6), which UC filed on October 4, 2018, about two months after the Saqrs filed their Complaint. In the First R&R, Magistrate Judge Bowman recommended that this Court grant UC's Motion to Dismiss in part and therefore dismiss several of the Saqrs' claims without prejudice. More specifically, as to the Saqrs' discrimination claim arising under Title II of the ADA, Magistrate Judge Bowman found that, although the Saqrs had adequately pled a discrimination claim, the Eleventh Amendment's sovereign immunity doctrine barred the specific Title II claim that the Saqrs were advancing, which was predicated on allegedly wrongful denial of access to a professional school. (Feb. 20, 2019 R&R, Doc. 11, #94). Because the Eleventh Amendment applied, Magistrate Judge Bowman further concluded that the Saqrs could not seek money

3

damages from UC in connection with that claim. Accordingly, she recommended dismissal of the Saqrs' ADA claim to the extent it sought damages, but concluded that the Saqrs' ADA Title II claim seeking injunctive relief should survive UC's Motion, under the *Ex parte Young* exception to sovereign immunity.

As for the Saqrs' ADA retaliation claims arising under Title V, Magistrate Judge Bowman concluded that, like the Saqrs' discrimination claims, Congress did not abrogate sovereign immunity for such claims, and so the Eleventh Amendment bars those retaliation claims (to the extent that they sought monetary relief). Separately, she also found that the Saqrs failed to adequately plead facts supporting their Title V retaliation claims, and thus could not proceed on those claims at all, even as to injunctive relief.

In that same R&R, Magistrate Judge Bowman also concluded that the Saqrs failed to state a claim for discrimination under the Rehabilitation Act. That is because that statute requires a heightened causation showing, i.e., that one's disability was the sole reason for the discrimination. She concluded that the Saqrs' own allegations showed they could not meet that causation standard, as the Saqrs state in their Complaint that UC ousted them for several additional reasons beyond their disabilities, including their national origin and race.

As for the Saqrs' discrimination claims arising under Title VI of the Civil Rights Act, Magistrate Judge Bowman found that Ahmad sufficiently pled a claim for relief, but that Omar did not. More specifically, she concluded that, Ahmad had properly stated a discrimination claim under Title VI by alleging that UC: (1) did not

4

provide the same level of counseling to him as it did to "non-minority students," (2) forced Ahmad to take a disproportionate amount of time off from school, as compared to members outside of his protected class, and (3) failed to contact his academic advisor about his PAC performance review process. And, because the Civil Rights Act is enforcement legislation under Section 5 of the Fourteenth Amendment, Eleventh Amendment immunity did not bar his claim. (Feb. 20, 2019 R&R at #86–87). As to Omar, though, the Magistrate Judge concluded he had not pled any allegations regarding UC's discriminatory treatment against him because of his protected-class status, and thus his Title VI claim failed as a matter of law.

Finally, Magistrate Judge Bowman found that sovereign immunity bars the Saqrs' state law claims for breach of contract and disability discrimination. As a result, the only claims that should have survived, Magistrate Judge Bowman concluded, were Ahmad's Title VI discrimination claim and the Saqrs' Title II ADA claims seeking injunctive relief.

None of the parties objected to this R&R issued on February 20, 2019. Thus, roughly a month later, on March 14, 2019, this Court (i.e., Judge Dlott, who was assigned to this case at the time) issued an Order (Doc. 15) adopting the First R&R in full, and thus dismissing many of the Saqrs' claims.

A month after the Court's Order, on April 15, 2019, UC filed a Motion for Judgment on the Pleadings (Doc. 19), which requested that the Court dismiss the Saqrs' then-remaining discrimination claims arising under Title II of the ADA, through which the Saqrs sought declaratory and injunctive relief. In that Motion, UC

argued that sovereign immunity bars the Saqrs' discrimination claims even to the extent that they seek only prospective relief, as the Saqrs failed to include in their Complaint allegations against, or requests for prospective relief from, any identified state official, which is a requirement a party must meet to fall within the exception to sovereign immunity set forth in *Ex parte Young*.

After the parties submitted briefs on that issue (*see* Docs. 22, 23), Magistrate Judge Bowman set oral argument on the matter for September 18, 2019. Two weeks before that hearing occurred, however, on September 6, 2019, the Saqrs filed a Motion to Amend the Complaint (Doc. 28), to which they attached a Proposed Amended Complaint (Doc. 28-1).

In their Proposed Amended Complaint, the Saqrs add two UC officials as Defendants—Andrew Filak Jr. and Laura Malosh. The Saqrs describe the two in the Proposed Amended Complaint simply as "agents and decision makers [sic] of UC's medical school." (Pls.' Proposed Am. Compl. at ¶ 6, #175). Given that the Saqrs filed their Motion to Amend only 12 days before the Court was set to hear oral arguments regarding UC's Motion for Judgment on the Pleadings related to the original Complaint, the parties were unable to fully brief the Saqrs' Motion to Amend prior to that hearing. Thus, Magistrate Judge Bowman did not hear arguments regarding the Saqrs' Motion to Amend during the September 18, 2019 hearing.

Five days after the hearing, on September 23, 2019, Magistrate Judge Bowman issued the Second R&R (which is the first of the two R&Rs under consideration in this Order). In that R&R, she recommended that this Court grant UC's Motion for

6

Judgment on the Pleadings. (Sept. 23, 2019 R&R, Doc. 30). The Magistrate Judge determined that, notwithstanding her previous R&R, in which she found that Ahmad could pursue an ADA Title II claim to the extent he sought prospective relief, in fact sovereign immunity bars such claims, just like claims for money damages. That is because, although the Saqrs sought prospective relief (the type of relief that *Ex parte Young* allows), the Saqrs had alleged wrongdoing only by UC itself—a public university in Ohio that is an "arm of the State." As an arm of the State, it is immune from suits in federal court that seek either monetary damages or prospective relief.

The Second R&R pointed out, however, that although sovereign immunity bars claims (including claims for prospective relief) against a State, it does not bar suits in federal court seeking prospective relief against officials who are acting on behalf of the State. (*Id.* at #191). Based on that observation, coupled with a cursory review of the Saqrs' then-recently filed Proposed Amended Complaint, Magistrate Judge Bowman noted in the Second R&R that it appeared the Saqrs had attempted to remedy the sovereign immunity problem as to their injunctive relief claims by adding two individuals affiliated with UC's College of Medicine as defendants—Filak and Malosh. (*Id.* at #194–95). But, as the Saqrs' Proposed Amended Complaint merely mentions the two individuals' names and generically describes them as "agents and decision makers [sic] of UC's medical school," (Pls.' Proposed Am. Compl. at ¶ 6, #175), Magistrate Judge Bowman further observed that "[i]t is not entirely clear [from the Proposed Amended Complaint] whether the newly proposed individual Defendants" might qualify as state officials acting on behalf of Ohio, and therefore

7

trigger the exception to the sovereign immunity doctrine that otherwise bars the Saqrs' Title II claims. (Sept. 23, 2019 R&R at #194–95).

Accordingly, in the Second R&R, Magistrate Judge Bowman recommended that this Court grant UC's Motion for Judgment on the Pleadings, but dismiss *without* prejudice the Saqrs' ADA Title II claims, to see whether they could plead a viable claim by reference to particular state officials. (*Id.* at #195). On the same day that she issued that R&R, September 23, 2019, she also issued an Order imposing a deadline of September 30, 2019, by which the Saqrs could choose either (1) to rest on their September 6, 2019 Motion to Amended the Complaint, or (2) to file a new Motion to Amend with a different proposed amended complaint to account for the concerns that the Magistrate Judge had identified. (*See* Doc. 31).

Notably, none of the parties objected to Magistrate Judge Bowman's Second R&R. And the Saqrs did not file a new Motion to Amend their Complaint by the September 30, 2019 deadline set forth in the September 23, 2019 Order. The Saqrs thus elected to rest on their then-pending Motion to Amend with the Proposed Amended Complaint that they attached to it.

In compliance with the schedule established by the September 23, 2019 Order, UC filed a memorandum in opposition to the Saqrs' Motion to Amend on October 4, 2019. (*See* Doc. 34). The Saqrs timely filed a reply brief on October 11, 2019. (*See* Doc. 35-1). But the reply added two new wrinkles: (1) the Saqrs provided details, for the first time, about Filak and Malosh's administrative positions at UC's College of Medicine, and (2) they attached to their brief an "Amended Proposed Amended

Complaint." The Saqrs contend that they did the latter to provide additional "clarity" as to the claims alleged in their Proposed Amended Complaint. It appears more likely, however, that the Saqrs' outside-the-permitted-timeframe filing was instead an effort to remedy the potential deficiencies in their Proposed Amended Complaint, deficiencies that UC had asserted in its response brief. Consequently, UC filed a Motion for Leave to File a Surreply or, in the Alternative, to Strike the Saqrs' "Amended Proposed Amended Complaint." (*See* Doc. 36). Magistrate Judge Bowman issued a notation order on October 18, 2019, which granted UC's Motion for Leave to File a Surreply. (*See* Dkt. Entry Oct. 18, 2019).

Less than two months later, on December 2, 2019, Magistrate Judge Bowman issued her Third R&R (which is the second of the two R&Rs under consideration now), which recommends that this Court: (1) disregard the Saqrs' allegations in their Reply and its attached Amended Proposed Amended Complaint, and (2) deny the Saqrs leave to file their Proposed Amended Complaint on futility grounds. (Dec. 2, 2019 R&R, Doc. 40). As to the latter, Magistrate Judge Bowman found that, regarding the claims that the Court had previously dismissed, the Saqrs simply re-allege in their Proposed Amended Complaint the same allegations that they had previously stated in their original Complaint, and so, for the reasons set forth in the First R&R (which this Court adopted in its March 15, 2019 Order), the Saqrs' unchanged allegations still fail. As for the Saqrs' discrimination claims arising under Title II of the ADA that were seeking prospective relief, Magistrate Judge Bowman concluded in the Third R&R that the doctrine of sovereign immunity bars those claims because,

although the Saqrs named two state officials as defendants, they did not establish that these state officials had any connection with an allegedly unlawful act against the Saqrs. That type of "connection," Magistrate Judge Bowman held, is required for the *Ex parte Young* exception to sovereign immunity to apply. (*Id.* at #281). Finally, Magistrate Judge Bowman recommended that, even if the claims in the Proposed Amended Complaint were not futile, this Court should still deny the Saqrs' Motion to Amend. That is because allowing their requested amendment would cause undue delay, given that the Saqrs filed that Motion more than a year after they had filed their original Complaint, nearly six months after they had informed the Court that they did not anticipate adding parties or claims, and "long after UC had engaged in extensive paper discovery and had deposed both [the Saqrs]." (*Id.* at #284–85).

Nine days after Magistrate Judge Bowman issued the Third R&R, on December 11, 2019, this case was transferred to the undersigned judge. Five days later, on December 16, 2019, the Saqrs filed an Objection (*see* Pls.' Obj., Doc. 42), which opposes the entire Third R&R (*id.* at #295) and argues that: (1) the Proposed Amended Complaint is not futile; (2) amendment would not unduly delay this action or prejudice UC; and (3) the Court should consider the Amended Proposed Amended Complaint, which is also not futile (*id.*). UC then filed a response. (*See* Doc. 43). Thus, currently before the Court are the September 23, 2019 Second R&R, to which no party has objected, and the Saqrs' Objection to the December 2, 2019 Third R&R.[3]

---

[3] There are other related matters currently before the Court that are not addressed here but delayed the pending action. More specifically, on January 10, 2020, the Saqrs' counsel filed a separate action before this Court only on behalf of Omar Saqr alleging the same common set of facts and claims in that lawsuit as alleged here. (*See* No. 1:20-cv-32). When Omar's counsel

## LAW AND ANALYSIS

### A.    The September 23, 2019 R&R.

On September 23, 2019, Magistrate Judge Bowman issued a R&R recommending that this Court grant UC's Motion for Judgment on the Pleadings because the Saqrs' Complaint failed to state a claim against any state officials and therefore the doctrine of sovereign immunity bars their suit. (*See* Sept. 23, 2019 R&R at #193–94). The September 23, 2019 R&R advised the parties that a failure to object within the 14 days specified by that R&R may result in forfeiture of rights on appeal, which includes the right to District Court review. (*See id.* at #196 (first citing *Thomas v. Arn*, 474 U.S. 140, 149–53 (1985); then *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981))).

Now, the time period for objection has long-since run, and no party has objected. *See* 28 U.S.C. § 636(b)(1)(C). "There is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a magistrate's report to which no objections are filed." *Thomas*, 474 U.S. at 152; *see also Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019) (noting that "*fail[ure] to file* an objection to the magistrate judge's R&R … is forfeiture").

---

filed the second action on January 10, 2020, however, he failed to identify the current action as a "related case" on the Civil Cover Sheet. (*See id.*, Doc. 1-2). As a result, Omar's second lawsuit was assigned to another judge of this Court. About a month and a half later, on February 21, 2020, UC filed in this action a Notice of Related Case (Doc. 44) that requested that the undersigned judge preside over both cases. A week later, on February 28, 2020, the Court granted UC's request, and so Omar's second action was transferred to the undersigned judge. (Doc. 46). And roughly a month after that, on March 20, 2020, the defendants in that case—all allegedly officials at UC's College of Medicine—moved to dismiss all of Omar's claims given that Omar already asserted the same claims for relief in this action, albeit against other defendants. That Motion to Dismiss later became ripe for the Court's review on April 27, 2020.

Thus, the Court **ADOPTS** Magistrate Judge Bowman's September 23, 2019 R&R (Doc. 30), and thereby **GRANTS** UC's Motion for Judgment on the Pleadings (Doc. 19) and **DISMISSES WITHOUT PREJUDICE** the Saqrs' discrimination claims arising under the Title II of the ADA as pled in the Complaint (Doc. 1).

## B. The Saqrs' Objection To The December 2, 2019 R&R.

As discussed above, the Saqrs filed their Motion to Amend the Pleadings about two weeks before Magistrate Judge Bowman issued the Second R&R on September 23, 2019, which recommends dismissing the Saqrs' discrimination claims arising under Title II of the ADA. And the Saqrs decided to stand by their Motion to Amend and the Proposed Amended Complaint that they had attached to that Motion rather than file a new motion to amend in response to the September 23, 2019 R&R, as the Magistrate Judge's separate Order said they could do. So, in the Third R&R issued on December 2, 2019, Magistrate Judge Bowman addressed and ultimately recommended denying the Saqrs' Motion to Amend, as the allegations in the Proposed Amended Complaint were futile, except for Ahmad Saqr's Title VI claim.

The Saqrs now object to that R&R on the ground that the Proposed Amended Complaint adequately states a discrimination claim under Title II of the ADA. Separately, the Saqrs argue that the Court should consider the claims set forth in the Amended Proposed Amended Complaint, a new pleading that they attached for the first time to their reply brief, and that they assert is not futile. Although the Saqrs' objections perhaps fall a little short of the requirements in Federal Rule of Civil Procedure 72(b)(2) and 28 U.S.C. § 636(b)(1)(C) mandating that they identify specific

12

objections to specific portions of the Third R&R, the Court gives their objections the benefit of the doubt, and addresses each of the Saqrs' arguments in turn.

### 1. Legal Standard.

If a party objects to an R&R within the allotted time, the district court must review de novo any portion of the magistrate judge's report "that has been properly objected to." Fed. R. Civ. P. 72(b); *see also* 28 U.S.C. § 636(b)(1). Here, the Saqrs seek to amend only their allegations related to Count I of their Proposed Amended Complaint. (*See* Pls.' Mot. to Am. #172; Pls.' Obj. at #298). And UC is attacking the sufficiency of those proposed pleadings. Thus, the Court must determine with fresh eyes whether the Saqrs may amend their Complaint. *See* Fed. R. Civ. P. 72(b).

Federal Rule of Civil Procedure 15(a) allows a party to amend their pleading once as a matter of course if done within 21 days of filing the original pleading. Otherwise they may do so only with leave of the Court, which "shall be freely given." Fed. R. Civ. P. 15(a). The Saqrs did not amend their pleadings within 21 days of filing their initial Complaint (which they did on August 3, 2018). Accordingly, Rule 15(a)(2) allows the Saqrs to file their amended pleading (whether the Proposed Amended Complaint or the Amended Proposed Amended Complaint) only with leave of the Court. They sought such leave as to the Proposed Amended Complaint, but declined to seek leave as to the Amended Proposed Amended Complaint, or at least they declined to do so within the time period the Magistrate Judge provided in her September 23, 2019 Order, which invited them to file a renewed motion to amend.

In reviewing that request, the Court should consider whether, among other things, the proposed amendment would be futile. *See Forman v. Davis*, 371 U.S. 178, 182 (1962). A proposed amendment is futile when that complaint could not survive a Rule 12(b)(6) motion to dismiss. *Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005) (citation omitted); *Riverview Health Inst. LLC v. Med. Mut.*, 601 F.3d 505, 512 (6th Cir. 2010) (citation omitted). Thus, the first question here is whether the Saqrs' Proposed Amended Complaint (which was filed before the Second R&R, and which is the pleading that the Magistrate Judge considered in the Third R&R) contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Williams v. City of Cleveland*, 771 F.3d 945, 949 (6th Cir. 2014) (citation omitted).

In assessing plausibility, the Court must construe the factual allegations in the Proposed Amended Complaint in the light most favorable to the Saqrs, accepting their allegations as true and drawing all reasonable inferences in the Saqrs' favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). But a pleading must offer more than mere "labels and conclusions," because "'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Nor is a court required to accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations[.]" *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). Thus, in reviewing the Proposed Amended Complaint for futility, the Court must distinguish between "well-pled factual allegations," which must be

14

treated as true, and "naked assertions," which need not be. *See Iqbal*, 556 U.S. at 628 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (alteration and quotation omitted); *see also Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 375 (6th Cir. 2011) (finding that because some of the plaintiff's factual allegations were "not well-pleaded[,]" "their conclusory nature 'disentitles them to the presumption of truth'") (citing *Iqbal*, 556 U.S. at 681); *Miller v. Md. Dep't of Nat. Res.*, No. 18-2253, 2020 WL 3127788, at \*4 (4th Cir. June 12, 2020) ("[T]he court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events ….").

### 2. The Saqrs' Discrimination Claim Arising Under Title II Of The ADA As Alleged In The Proposed Amended Complaint Fails As A Matter Of Law.

In the Saqrs' Motion to Amend, the Saqrs seek to change only the allegations related to their first cause of action, which claims that UC, Filak, and Malosh violated Title II of the ADA by failing to accommodate the Saqrs' disabilities and then dismissing them from the school. Based on that theory, the Saqrs seek injunctive relief against Filak and Malosh, who, according to the Proposed Amended Complaint, "are agents and decision makers [sic] of UC's medical school." (Proposed Am. Compl. at ¶ 6, #175). The Saqrs further state that all claims against Filak and Malosh "are for their actions in their official capacity." (*Id.*). The parties dispute whether the Eleventh Amendment bars the Saqrs' first cause of action.

On its face, the Eleventh Amendment bars "any suit in law or equity, commenced or prosecuted against one of the United States." U.S. Const. amend. XI.

In *Ex parte Young*, 209 U.S. 123 (1908), however, the Supreme Court announced an exception to Eleventh Amendment immunity for prospective relief claims against individual state officials in their official capacities. To trigger that exception, two conditions must be met. First, the plaintiff's action must seek prospective relief that ends a continuing violation of federal law. *Carten v. Kent State Univ.*, 282 F.3d 391, 395 (6th Cir. 2002). And, second, the defendant-state officials must have "some connection" to that ongoing violation. *See Ex parte Young*, 209 U.S. at 157–59. That is, "[a] plaintiff must allege facts showing how a state official is connected to, or has responsibility for, the alleged constitutional violations." *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013) (citing *Floyd v. County. of Kent*, 454 F. App'x 493, 499 (6th Cir. 2012)).

Although the Saqrs' Proposed Amended Complaint is not a model of clarity, the Court concludes that its allegations satisfy the first *Ex parte Young* requirement. The Saqrs seek prospective relief in the form of an Order reinstating them as students. And that prospective relief is designed to prevent alleged ongoing federal law violations: UC wrongfully dismissing the Saqrs from its College of Medicine and failing to accommodate them for their disabilities while they were students. (*See* Proposed Am. Compl. at ¶¶ 60-69, #181). The Sixth Circuit has found that claims for reinstatement and disability accommodations are prospective in nature, and thus can, in appropriate circumstances, fit within the contours of *Ex parte Young*. *See Carten*, 282 F.3d at 396 (citing *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 459 (6th Cir. 1998)) (reinstatement); *see also Ability Ctr. of Greater Toledo v. City of*

16

*Sandusky*, 385 F.3d 901, 912–13 (6th Cir. 2004) (accommodation or "meaningful access to public services").

The Saqrs' Proposed Amended Complaint falls short, however, as to the latter requirement. That is, although *Ex parte Young* allows for claims seeking prospective relief against state officials, not just any state official will do—as noted above, the official must have "some connection" to the ongoing federal violation. *Durham v. McWhorter*, 798 F. App'x 533, 534 (6th Cir. 2020) (citing *Young*, 209 U.S. at 157–59) ("[A] Plaintiff may seek a prospective injunctive against state officials who have 'some connection' to an ongoing constitutional violation."). This "connection" requirement tracks, or perhaps more accurately largely dovetails with, Article III's standing requirements—injury in-fact, causation and redressability. *See, e.g., Dig. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957 (8th Cir. 2015) (referring to the inquiries as "related" and noting that if an official has "'some connection with the enforcement' of a state law for purposes of the *Ex Parte Young* doctrine, then the case or controversy requirement of Article III was satisfied"); *Cressman v. Thompson*, 719 F.3d 1139, 1146 n.8 (10th Cir. 2013) (citing *Planned Parenthood of Idaho, Inc. v. Wasden,* 376 F.3d 908, 919 (9th Cir. 2004)) (observing that "there is a common thread between Article III standing analysis and *Ex parte Young* analysis"). *But see Jacobson v. Fla. Sec'y of State*, 957 F.3d 1193, 1210 (11th Cir. 2020) (quoting *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (stating that "Article III standing and the proper defendant under *Ex parte Young* are 'separate issues")). Consistent with that notion, showing "connection" under *Ex parte Young*

requires plaintiffs to allege facts showing both (1) that the state official played some role in causing the ongoing harm of which plaintiff complains (or that there is a reasonable prospect that the official will cause imminent future harm to the plaintiff), and (2) that an injunction against that official will be likely to provide redress.

The Saqrs Proposed Amended Complaint stumbles on both grounds. Let's start with the causation aspect of the "some connection" requirement. That is typically stated in terms of "responsibility": "A plaintiff must allege facts showing how a state official is connected to, or has responsibility for, the alleged constitutional violations." *Top Flight Entm't*, 729 F.3d at 634. *See also, e.g., Osterback v. Scott*, 782 F. App'x 856, 859 (11th Cir. 2019) (quoting *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336-37 (11th Cir. 1999)) ("'Unless the state officer has some responsibility to enforce the statute or provision at issue, the 'fiction' of *Ex parte Young* cannot operate.'"). That is what *Ex parte Young* means by "some connection *with the enforcement of the act*." *See* 209 U.S. at 157 ("[The] officer must have some connection with the enforcement of the act, or else it is merely making him a party as representative of the state, and thereby [impermissibly] attempting to make the state a party.") (first emphasis added).

In their proposed pleading, the Saqrs do not allege that Filak or Malosh are the officials who had responsibility for making either the decision to dismiss the Saqrs, including whether to deny them accommodations, or the decision not to re-admit them (which is presumably the act that matters for *Ex parte Young* purposes because the doctrine only allows for consideration of ongoing violations, as opposed

18

to past harms). Indeed, in the entirety of the Saqrs' Proposed Amended Complaint, the Saqrs mention Filak and Malosh exactly once, describing them collectively as "agents and decision makers [sic]" of UC's College of Medicine. (Proposed Am. Compl. at ¶ 6, #175).[4] That generalization doesn't cut it. By failing to include any allegations as to positions that Filak and Malosh hold at UC's College of Medicine, or the authority that they purportedly exercise over medical students' eligibility and accommodation status, the Saqrs do not connect their alleged harm to actions that Filak or Malosh allegedly took.

The disconnect between Filak and Malosh and the Saqrs' alleged harm is highlighted by the fact that the Proposed Amended Complaint alleges that several apparently separate institutions at UC (e.g., the PAC, the appeal panel, and the College of Medicine) each contributed in different ways to violating the Saqrs' federal rights, and yet the Saqrs never explain how (or if) Filak and Malosh relate to any of those institutions. For example, the Saqrs claim that the PAC, which consists of 30 "faculty members," communicates with students who are struggling and decides whether to recommend that a struggling student should be dismissed from UC's

---

[4] The Court notes that the Saqrs have since provided additional information about the administrative positions that Filak and Malosh hold at UC's College of Medicine. Unfortunately for the Saqrs, they offered that additional information for the first time in their Reply Brief in support of their Motion for Leave to Amend. (Pls.' Reply, Doc. 35, #217). As parties cannot raise new arguments in a Reply Brief, much less new allegations against individuals whom the Saqrs intend to bring in as defendants in this action, the Court will not consider that information in determining whether the Saqrs' Proposed Amended Complaint alleges that Filak and Malosh have "some connection" with their discrimination claim. *See OnX USA, LLC v. Sciacchetano*, No. 1:11-cv-2523, 2012 WL 2191206, at *3 (N.D. Ohio June 14, 2012) (refusing to perform an "analysis … requir[ing] consideration of matters outside the pleadings" because that would "draw[] the court beyond the bounds of inquiry required by a motion to amend").

College of Medicine. (Proposed Am. Compl. at ¶¶ 10–11, 16, #176–77). If the PAC recommends dismissal, then the student can appeal that recommendation. (*Id.* at ¶ 12, #176). Three faculty members (which the Court assumes are faculty members of UC's College of Medicine, rather than faculty members at any UC program) sit on the appeal panel. (*Id.* at ¶ 13). The PAC and the student present information to the appeal panel. (*Id.*). But although the Proposed Amended Complaint clarifies the procedure, it does not explain the roles, if any, that Filak or Malosh played in it.

Adding to the confusion, the Saqrs also allege that some unidentified "agents" of UC actually sought to help the Saqrs overcome their struggles as medical students. For example, the Saqrs claim that one agent, "who represents minorities, circulated an email stating that Ahmad did not receive the same level of support that [UC]'s other students received." (*Id.* at ¶ 30, #178). Similarly, the Saqrs allege that "[o]ne of [UC]'s other agents informed Ahmad that she was unaware of other students having to undergo such a rigorous exam schedule." (*Id.* at ¶ 38, #179). The Proposed Amended Complaint neither explains who these agents are nor addresses whether one of them may be Filak or Malosh. In short, there is simply no allegation that the named officers "caused" the ongoing harm of which the Saqrs complain. Without that, they cannot show the "connection" necessary to avail themselves of the *Ex parte Young* exception to state immunity.

The Saqrs also fall short on the related redressability aspect of the "connection" requirement. To take advantage of *Ex parte Young*, "[t]he official against whom suit is brought must have the authority to perform the act sought" by the prospective

relief. *Ling v. Univ. of Tenn.*, No. 04-2484, 2005 WL 8156688, at *2 (W.D. Tenn. Jan. 4, 2005). *See also Masengill v. Univ. of Tenn.*, No. 3:98-cv-137, 2001 WL 34079321, at *6 (E.D. Tenn. Oct. 22, 2001) (rejecting an *Ex parte Young claim* because "it [did] not appear to be within [defendant's] authority to override the employment decision of the state university and the county agency"). Here, the Saqrs have not alleged whether Filak or Malosh holds a position at UC's College of Medicine that grants authority to implement the injunctive relief that the Saqrs desire. Thus, the Saqrs have not shown that the prospective relief they seek (injunctive relief against these two individual officials) would provide redress for the ongoing harm that the Saqrs allegedly suffer.

For both of these reasons, the Saqrs' discrimination claims arising under Title II of the ADA, at least as pled in their Proposed Amended Complaint, are futile. They have failed to include the allegations necessary to allow them to take advantage of *Ex parte Young* to avoid the sovereign immunity that bars those claims.

The Saqrs don't meaningfully refute that reasoning. Rather, they assert that because Magistrate Judge Bowman previously issued an R&R (her first one, back in February 2019) in which she found the Saqrs *had* pled facts that adequately supported discrimination claims seeking injunctive relief against UC, the Saqrs need not now plead any additional facts about the two officials' connections to Saqrs' alleged harms. (Pls.' Obj. at #299–300). But the Second R&R, an R&R to which no one objected, expressly found that this prior determination, the one on which the Saqrs now rely, was wrong. (*See* Sept. 23, 2019 R&R at #193 (stating that, in the

21

previous R&R, "[t]he undersigned assumed the application of the [*Ex parte Young*] doctrine without benefit of briefing, and with the presumption that courts should be loath[] to grant motions to dismiss on issues that have not been squarely presented. In hindsight, and with the benefit of UC's newly briefed Rule 12(c) motion that does squarely address this issue, the undersigned concludes that the *Ex parte Young* exception does not apply and does not save Plaintiffs' claims for prospective relief")). And the Magistrate Judge was correct the second time around. As discussed above, *Ex parte Young* explains that its exception to sovereign immunity applies only if the defendant-official has "some connection with the enforcement of the act"—otherwise the plaintiff "is merely making [the official] a party as representative of the state, and thereby [impermissibly] attempting to make the state a party." 209 U.S. at 157.

The Saqrs contend that they can still proceed because official capacity suits are, in general, "another way of pleading an action against an entity of which an officer is an agent." (Pls.' Obj. at #300 (citing *Kentucky v. Graham*, 473 U.S. 159 (1985))). But that argument merely highlights their underlying problem—to the extent that they are seeking to proceed directly against the State (or an arm of the State), the Saqrs run squarely into sovereign immunity. The *Ex parte Young* doctrine provides a path around that bar, but only if the Saqrs can make, and have made, the necessary allegations to take advantage of that doctrine. As noted above, they have failed to do so here. Thus, the Proposed Amended Complaint is futile, and the Court declines to allow the Saqrs to file it.

**3.  The Court Will Not Consider The Saqrs' Untimely "Amended Proposed Amended Complaint," Which Magistrate Judge Bowman Previously Allowed Them To File And The Saqrs Chose Not To.**

As the Court also discussed above, the Saqrs attached an "Amended Proposed Amended Complaint" to their Reply Brief in a last-ditch effort to support their Motion to Amend. That is a non-starter. The Saqrs cannot use their Reply Brief to raise new claims or issues, let alone to advance an entirely new proposed pleading. That is particularly so here, as Magistrate Judge Bowman specifically provided the Saqrs an opportunity to file a new motion to amend, to which they could have attached their new pleading, and even expressly notified them of the weaknesses that she saw in the Proposed Amended Complaint attached to their then-pending Motion to Amend. The Saqrs did not avail themselves of her offer, but rather elected to stand by their Proposed Amended Complaint. Parties are bound by their litigation choices, and the Saqrs made their choice here.

At the very least, the Saqrs would need to move anew to amend their complaint to add allegations not included in their Proposed Amended Complaint. But, any such motion would come more than a year after the Saqrs filed their initial Complaint, thus long after the deadline to amend set forth in the Calendar Order. So the Saqrs would need to establish the additional showing of good cause for modifying the Calendar Order, *see* Fed. R. Civ. P. 6(b)(4), which they have not done, nor even tried to do. Thus, for present purposes, the Court need not explore whether the claims in the Saqrs' Amended Proposed Amended Complaint are likewise futile or would fall

under the *Ex parte Young* exception, given that the Court declines on procedural grounds to allow the Saqrs to amend their pleading.

## CONCLUSION

For the reasons set forth above, the Court **ADOPTS** Magistrate Judge Bowman's September 23, 2019 R&R (Doc. 30), to which no party objected. Separately, the Court **OVERRULES** the Saqrs' Objections (Doc. 42) to the December 2, 2019 R&R (Doc. 40). Accordingly, the Court **ADOPTS** Magistrate Judge Bowman's December 2, 2019 R&R (Doc. 40), **GRANTS** Defendants' Motion for Judgment on the Pleadings (Doc. 19), and **DENIES** the Saqrs' Motion for Leave to File an Amended Complaint (Doc. 28). As a result, the Court **DISMISSES** all of the Saqrs' claims that they allege in their Complaint, except for Ahmad's claim arising under Title VI. That sole remaining cause of action shall move forward.

**SO ORDERED.**

September 8, 2020
**DATE**                                               **DOUGLAS R. COLE**
                                                        **UNITED STATES DISTRICT JUDGE**

24